THE STATE OF OHIO, APPELLEE, *v.*
WOODS, APPELLANT.

(No. 81AP-909—Decided May 18, 1982.)

*Mr. Michael Miller,* prosecuting attorney, and *Ms. Joyce S. Anderson,* for appellee.

*Mr. James Kura,* county public defender, and *Ms. Gloria Eyerly,* for appellant.

WHITESIDE, P.J. Defendant-appellant, Bessie B. Woods, appeals from an order of the Franklin County Court of Common Pleas revoking her probation and reinstating the sentence of six months to five years imprisonment previously imposed as the sentence for her conviction of theft, to which she pled guilty.

After the initial sentence of imprisonment was imposed, defendant made a motion for shock probation, which was sustained. By order entered September 12, 1979, the sentence previously imposed was suspended, and defendant was placed on five years probation upon various terms and conditions, including "enrollment in SAC [Special Achievement Coun-

cil], restitution payment and payment of costs." On November 2, 1981, the probation officer filed a report requesting revocation of defendant's probation because of several violations, including an indication that: (1) defendant had attended only twenty-nine of the required forty SAC meetings in 1981; (2) defendant had attended only five of the required forty AA (Alcoholics Anonymous) meetings during 1981; (3) defendant had made only one payment on costs of $30 on October 10, 1979, leaving the balance of $280; and (4) defendant had not made any payment toward restitution in the amount of $11,314.75.

Defendant stipulated probable cause. Following a revocation hearing, the trial court revoked probation and reinstated the original sentence which had been suspended. Defendant appeals, raising a single assignment of error, as follows:

"The trial court erred in revoking appellant's probation for failure to pay costs and make restitution where the record revealed that appellant was indigent and unable to make such payments. By revoking appellant's probation under these circumstances, the trial court denied appellant the equal protection of the laws as guaranteed by the Fourteenth Amendment to the Constitution of the United States."

As defendant points out, the trial court revoked her probation for her failure to make any effort since October 10, 1979, to comply with the conditions of probation requiring her to make restitution and to pay costs. She contends that she is now indigent and, thus, her probation should not be revoked because of her failure to make any effort to pay court costs or to make restitution of the more than $11,000 which she obtained through welfare fraud. Defendant denies the state's contention that she is seeking special benefits or privileges because of her indigency so as to avoid imprisonment which otherwise would be imposed.

The record reflects that defendant

lost her job some four months before the probation revocation hearing. She was attempting once again to obtain welfare benefits to support herself and her children.

Where a person seeks to avoid the consequences otherwise that would be imposed because of claimed indigency, such person must bear the burden of going forward with evidence indicating indigency to such an extent that failure to make otherwise required payments must be excused essentially because of practical impossibility. Thus, in *Tate* v. *Short* (1971), 401 U.S. 395, the Supreme Court held it to be a denial of equal protection to impose only a fine for those who are able to pay it but to convert the fine to imprisonment for those unable to pay it. One of the suggested alternatives, made in fn. 5 at page 400, was permitting a fine to be paid in installments. *Tate,* of course, pertains to fines, not conditions of probation established to permit a convicted felon to avoid serving the term of imprisonment previously imposed.

Nevertheless, it is apparent that the trial court allowed a total period of five years for the making of restitution and payment of the fine. There is no indication that at any time defendant made any objection or sought some different term of probation. Rather, she accepted the terms of probation in order to be released from the reformatory upon shock probation. While there is no direct evidence of installment payments established, it is quite apparent that the trial court did allow a total of five years for such payment, which would permit sixty monthly installment payments if defendant wished to do so. Here, she has made no effort whatsoever at payment for a period of two years after making the initial $30 payment on October 10, 1979. Yet, the evidence indicates that defendant lost her job four months before the probation revocation hearing so that presumably she was employed up until that time. At least, there is no indication of any reason why

defendant did not make any payments for the twenty months prior to her losing her job. On the other hand, there is an indication that, in February 1980, defendant at least was warned about her not making payment of the court costs.

Here, we are not concerned with an indigent who is being discriminated against solely because of inability to pay, such as was involved in *Tate*. Rather, we are concerned with a probationer who has been released from imprisonment upon the condition that she pay court costs and make restitution of the money she obtained by theft offenses, but who has made no good-faith effort to comply with the terms of probation that she both pay costs and make restitution. Had defendant made a good-faith effort within the limits of her ability to comply with the conditions of probation, it might well be an abuse of discretion to revoke probation. Here, there has been no effort made, much less a good-faith effort.

Equal protection is best served when all are required to make good-faith efforts to comply with conditions of probation, and not by giving special privileges either to those who have greater ability to pay or to those who have lesser ability to pay. In other words, both the indigent and the non-indigent should be required to make such payments as reasonably can be made from their resources. Clearly, the indigent should not be required to make payments at the same pace or in the same installment amounts as would someone having greater ability to pay. However, under our modern understanding, indigency does not mean destitute. A person may have limited resources and still be considered indigent under our modern understanding of the term. Accordingly, a person seeking to be excused from compliance with the terms of his probation for a criminal offense because of indigency must demonstrate that he has made a good-faith effort within the limits of his ability to comply with the terms of his probation order. Here, defendant has made

no such showing. Rather, the record reflects that for over two years defendant made no effort whatsoever at compliance with the terms of her probation regarding payment of court costs and making restitution, even though she apparently was employed until approximately four months prior to the probation revocation hearing. Such record does not demonstrate a denial of equal protection of the law to defendant because of indigency. There is no indication that indigency has been the cause of her apparent lack of any good-faith effort at compliance with the terms of her probation with respect to paying costs and making restitution. Accordingly, the assignment of error is not well-taken.

For the foregoing reasons, the assignment of error is overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.

*Judgment affirmed.*

STRAUSBAUGH and NORRIS, JJ., concur.