The STATE of Ohio, Appellee,

v.

TAYLOR, Appellant.

[Cite as *State v. Taylor* (1992), 76 Ohio App.3d 835.]

Court of Appeals of Ohio,
Clark County.

No. 2700.

Decided Feb. 19, 1992.

*Stephen A. Schumaker*, Prosecuting Attorney, for appellee.

*David R. Miles*, for appellant.

---

WOLFF, Judge.

Stephan Taylor, appellant, was charged by indictment with five counts of aggravated trafficking in drugs in violation of R.C. 2925.03. Specifically, Taylor was charged with selling or offering to sell cocaine on September 12, 1989, October 25, 1989, November 15, 1989, November 16, 1989, and November 17, 1989. He was found guilty by a jury. The trial court sentenced Taylor immediately after the jury returned its verdict, without benefit of a presentence investigation, to five consecutive two-year terms of incarceration, and fined Taylor $5,000 on each count for an aggregate fine of $25,000.

On appeal, Taylor advances seven assignments of error, the first of which is as follows:

"I. The trial court abused his discretion and erred as a matter of law in overruling appellant's trial counsel's motions for a continuance of the jury trial."

The indictment against Taylor was filed November 27, 1989. On or about December 18, 1989, the trial court scheduled the case for trial on February 13, 1990. On December 11, 1989, the prosecutor furnished to Taylor's counsel, and filed with the court, a list of the names and addresses of all witnesses with the exception of two confidential informants. As to the two confidential informants, the prosecutor represented in his December 11 filing that the two

informants' "identity will be disclosed upon specific request, but only after arrangements have been made to insure their safety."

On February 8, 1990, counsel for Taylor filed a motion to continue the February 13, 1990 trial date, which the trial court overruled by entry of February 12, 1990. On February 13, 1990, counsel for Taylor filed a motion for reconsideration of the trial court's previous overruling of his motion for continuance, which the trial court considered in chambers on the record prior to the voir dire examination of prospective jurors.

Counsel for Taylor represented to the court in chambers that it was not until February 8, 1990, that the prosecutor furnished him with transcripts of certain tapes which had been made of the transactions giving rise to the charges in the indictment, or with the identification of the state's two confidential informants. Taylor's counsel also stated, however, that he had received summaries of four of the five transactions, with the name of the confidential informant whited out, January 5, 1989, and that he received copies of the tapes January 18, 1989, and because the tapes were "inaudible," he told the prosecutor he needed transcripts. Taylor's counsel further stated that he was not in possession of the confidential informants' addresses or criminal records, and that he was unaware of any cases pending against the confidential informants or of any deals made between law enforcement personnel and the confidential informants to secure the informants' cooperation. He further stated that the prosecutor would not provide him with reports made by the police.

The prosecutor responded that he had informed Taylor's counsel "very early on" that he would provide the names of the confidential informants, but that in the event that he did so, there would be no plea negotiations. The prosecutor stated that he had also provided Taylor's counsel with "the buy reports * * * as to all transactions * * *," even though he believed those police reports were not discoverable. He also stated that the confidential informants, at the time of their cooperation with the police, had no cases pending against them and that they had been compensated with money for their cooperation.

The prosecutor also represented that since their names had been revealed to Taylor's counsel, the confidential informants or their families had begun to receive phone calls from Taylor or others associated with him "as to what's going to happen if they testify." The prosecutor strongly objected to any continuation of the trial. He expressed a concern that if the matter were continued, Taylor and his confederates would attempt to prevent the state's witnesses from testifying.

Taylor's trial counsel did not argue to the trial court, nor does Taylor argue on appeal, that the prosecutor was derelict in his responsibilities to provide discovery, as set forth in Crim.R. 16. Although the record does not affirmatively establish that the prosecutor furnished counsel for Taylor with the addresses and felony conviction records of the two confidential informants, see Crim.R. 16(B)(1)(e), it has not been argued, nor does the record portray, that Taylor was prejudiced as a result of this possible deficiency. Furthermore, it was not argued to the trial court, nor is it argued on appeal, that the prosecutor did not furnish the names of the confidential informants, or the transcripts, in a timely fashion. In any event, as to the confidential informants, all that Taylor was entitled to was their names, addresses, and felony conviction records.

Taylor acknowledges on appeal that whether to grant a continuance is commended to the sound discretion of the trial court. Although he claimed in general terms that he needed more time to prepare for trial, Taylor's trial counsel did not demonstrate to the trial court the potential prejudice to Taylor of learning the identity of the two confidential informants, or receiving the transcripts, for the first time on February 8, 1989. Nor does his appellate counsel point out how Taylor was prejudiced by learning the identity of the state's two confidential informants, or receiving the transcripts, for the first time on February 8, 1989. It was developed during the testimony of the informants that both had been paid for their cooperation with the police, that the female informant was motivated by revenge, that the male informant had a prior conviction in 1988 for aggravated trafficking, and that both were crack users. In short, Taylor's trial counsel does not appear to have been hampered in developing the unsavory aspects of the confidential informants' backgrounds and character for consideration by the jury.

In addition to representing to the trial court that he had done what he was required to do by way of providing discovery to Taylor's trial counsel, the prosecutor also represented to the trial court that the state was then ready to proceed to trial, that its confidential witnesses or their families had received threatening telephone calls from Taylor and his confederates, and that the state wished to proceed to trial as scheduled so that its case would not be weakened by the passage of time and the possible loss of witnesses willing to testify.

Based on the information before the trial court on February 13, 1989, we find no abuse of discretion in its overruling the motion for continuance. Upon a review of the entire record, we fail to perceive how Taylor was prejudiced by the trial court's refusal to continue the matter for trial.

The first assignment of error is overruled.

"II. The trial court abused his discretion and erred as a matter of law in sentencing appellant to the maximum prison sentences and fines."

In this case, the trial court sentenced Taylor, without a presentence investigation, to the maximum permissible sentence on each offense, which sentences the trial court ordered be served consecutively, and imposed the maximum fine on each count.

Taylor contends that he was sentenced without the trial court's consideration of the statutory mitigating criteria found in R.C. 2929.13, and that the trial court was predisposed to impose maximum penalties on account of his exercising his constitutional rights to a trial by jury and because he had been portrayed in the media as "the biggest drug operator in town."

The trial court was not required to order a presentence investigation and report. See Crim.R. 32.2(A). Furthermore, we have held that where a criminal sentence is within statutory limits, an appellate court should accord the trial court the presumption that it considered the statutory mitigating criteria in the absence of an affirmative showing that it failed to do so. See *State v. Crouse* (1987), 39 Ohio App.3d 18, 528 N.E.2d 1283.

In our judgment, the record fails to affirmatively demonstrate that the trial court failed to consider the statutory mitigating criteria established in R.C. 2929.13, which are as follows:

(1) The offense was the result of circumstances unlikely to recur;

(2) The victim of the offense induced or facilitated it;

(3) There are substantial grounds tending to excuse or justify the offense, though not sufficient to establish a defense;

(4) The offender acted under strong provocation;

(5) The offender has no history of prior delinquency or criminal activity, or has led a law-abiding life for a substantial time before commission of the present offense;

(6) The offender is likely to respond quickly to correctional or rehabilitative treatment.

In addition to the evidence presented at trial, prior to sentencing the trial court heard from counsel for the parties that Taylor was nineteen years old, that he had not graduated from high school, and that in 1988 he had been sent as a juvenile to the Ohio Youth Commission for aggravated trafficking. Taylor's previous motion for reduction of bond pending trial represented that he had been unemployed at the time of his arrest. The trial evidence supported the prosecutor's observation that Taylor was a "very seasoned drug dealer."

The information before the trial court at the time of sentencing did not establish any of the statutorily designated mitigating criteria. The trial court cannot be faulted for not considering that which was not established. There is nothing of record to suggest that the trial court was predisposed to impose the maximum penalty because Taylor exercised his right to a trial by jury. Nor does the record support Taylor's contention that he was sentenced as he was because of the media's portrayal of him as a substantial drug dealer.

The second assignment of error is overruled.

Taylor's third through seventh assignments of error argue that as to each incident his conviction should be reversed because the state failed to present sufficient evidence on each and every element of the alleged offense or because each conviction is against the manifest weight of the evidence.

Upon our review of the record, we are satisfied that as to each alleged offense, the state presented sufficient evidence to establish guilt beyond a reasonable doubt, and that as to each alleged offense, the conviction is not against the manifest weight of the evidence.

These assignments of error are overruled.

The judgment will be affirmed.

*Judgment affirmed.*

FAIN, P.J., and WILSON, J., concur.