The STATE of Ohio, Appellee,

v.

HAMANN, Appellant.

[Cite as *State v. Hamann* (1993), 90 Ohio App.3d 654.]

Court of Appeals of Ohio,
Cuyahoga County.

Nos. 62652, 62689.

Decided July 7, 1993.

*Stephanie Tubbs Jones,* Cuyahoga County Prosecuting Attorney, and *Paul M. Soucie,* Assistant Prosecuting Attorney, for appellee.

*John B. Gibbons,* for appellant.

KRUPANSKY, Judge.

Defendant-appellant William A. Hamann, Jr. appeals from sentences imposed by the common pleas court following his guilty pleas to thirty-eight counts of theft, forgery and uttering in two separate criminal cases. Defendant committed

the crimes involving more than $2,470,000 against various trusts, estates, guardianships and financial institutions in the course of administering probate accounts over a seven-year period while a practicing attorney. The nature and extent of defendant's looting of funds entrusted to him came to light after investigations of bank fraud, false federal estate tax returns and forgery of probate court documents conducted by the Federal Bureau of Investigation and the probate court in March 1991.

Defendant was indicted by the Cuyahoga County Grand Jury in the first criminal case, case No. CR–265744, April 12, 1991 on the following five felony charges, *viz.:* (1) forging an Appointment of Administrator form with the names of a probate judge and court clerk to appoint himself as administrator for the estate of Jean E. Popp in violation of R.C. 2913.31(A)(2); (2) uttering the same Appointment of Administrator form to Cuyahoga Savings in violation of R.C. 2913.31(A)(3); (3) forging an estate tax release form with the name of the state of Ohio Tax Commissioner for the same estate in the amount of $23,437.17 in violation of R.C. 2913.31(A)(2); (4) uttering the same tax release form to Cuyahoga Savings in violation of R.C. 2913.31(A)(3); (5) grand theft of property or services from Cuyahoga Savings with a value of at least $5,000 in violation of R.C. 2913.02.

After further investigation defendant was charged by information in the second case, case No. CR–271171, August 29, 1991 on thirty additional counts of theft in the total amount of $2,373,786.67, two additional counts of forgery and two additional counts of uttering. The information alleged defendant committed the crimes over the course of a seven-year period from November 1983 to April 1991. The thirty theft counts perpetrated against his clients and others in violation of R.C. 2913.02 ranged from second degree felonies to a first degree misdemeanor based on the amounts stolen as follows:

(A) from the following trusts, *to wit:*

(1) Lillian M. Otto, $181,525.64, (2) Olga A. Mikell, $219,597.52, (3) for the benefit of Ralph A. Abe, $152,460.74;

(B) from the following estates, *to wit:*

(4) Bertha S. Herdman, $22,743.99, (5) Mable J. Rowe, $5,899.55, (6) Gertrude V. Haren, $109,183.86, (7) Josephine Francis, $38,800.42, (8) Helen P. Smith, $6,650.95, (9) Bertram Jagielky, $13,914.87, (10) Ruth L. Deisman, $490,207.99, (11) Doris O'Boyle, $121,977.40, (12) Edward R. Rinaldi, $60,000;

(C) from the following guardianships, *to wit:*

(13) Bertram Jagielky, incompetent, $77,102.53, (14) Cassandra Ann Bowden and John Arthur Bowden, minor, $36,231.26;

(D) *from the following* financial institutions, *to wit:*

(15) Ohio Savings Bank, $55,833.81, (16) First Federal Bank, $37,536.15, (17–19) First Federal Savings and Loan, $100,038.90, $105.52 and $68,161.35, (20–26) Third Federal Savings and Loan Association of Cleveland, $15,276.26, $23,703.56, $48,064.10, $15,649.86, $99,892.87, $479.60 and $1,262.37, (27–28) Cardinal Federal Savings Bank, $38,266.44 and $16,955.65;  and

(E) from the following individuals, *to wit:*

(29–30) Anne Cleary, individually and as trustee, $96,313.28 and $219,950.23.

The information also charged defendant with two counts each of forgery and uttering against Anne Cleary and the estate of Edward R. Rinaldi.

Defendant waived formal indictment in case No. CR–271171 during a hearing on August 30, 1991 and subsequently entered pleas of guilty on September 9, 1991 to all counts in both cases, except for the count of theft in the amount of $60,000 from the estate of Edward R. Rinaldi, which was nolled.  Defendant was advised of the potential penalties applicable to his offenses in each case and acknowledged when entering his guilty pleas that the prosecution made no promises concerning his potential punishment.  The trial court thereafter journalized defendant's guilty pleas in both cases, ordered a Crim.R. 32.2 presentence report pursuant to defendant's request and scheduled sentencing for October 3, 1991.  Defendant filed a presentence memorandum with the trial court on October 2, 1991, supported by the following documents, *viz.:*  (1) a financial exhibit purporting to summarize defendant's use of funds for the three-year period from January 1988 to December 1991, and (2) eight letters from various family members and friends requesting leniency in sentencing.

Defendant, his wife, two victims and counsel for a third victim made statements to the trial court during the October 3, 1991 sentencing hearing.  Defendant admittedly completed thousands of transactions involving approximately $15,000,-000 in various probate and mortgage servicing accounts at several financial institutions from 1988 to 1991.  The prosecutor acknowledged defendant's cooperation with the investigation but stated that based upon a review of bank records at five financial institutions he was unable to determine whether a complete accounting of all the stolen funds had been made.

On the federal charges, an assistant U.S. attorney prosecuting defendant on related federal bank fraud and false federal estate tax charges stated on defendant's behalf pursuant to a plea agreement in federal court that the FBI found no missing funds from the two defendant's bank accounts investigated. The assistant U.S. attorney stated it was "a reasonable conclusion" the stolen funds had been spent and he was unable to locate any additional "sources of funds in accounts at a range of financial institutions."

Following the hearing, the trial court sentenced defendant in case No. CR–271171 to the following sentences on the twenty-nine theft counts, *viz.*: (1) indefinite terms of five to fifteen years and a $5,000 fine on each of the eight second-degree felony theft convictions involving more than $100,000; (2) two years and a $5,000 fine on fifteen of the eighteen third-degree felony theft convictions involving more than $5,000 but less than $100,000, and one and one-half years and a $2,500 fine on the three remaining third-degree felony theft convictions; (3) one and one-half years and a $2,500 fine on each of the two fourth-degree felony theft convictions involving more than $300 but less than $5,000; and (4) six months on the one first-degree misdemeanor theft conviction involving less than $300. The trial court sentenced defendant to sentences of eighteen months' imprisonment and a $2,500 fine on each of the two forgery convictions and each of the two uttering convictions. The trial court ordered all sentences to be served consecutively except for the six-month sentence on the misdemeanor theft conviction. The trial court's October 9, 1991 sentencing order in case No. CR–271171 concluded as follows:

"Total maximum term of incarceration of 84 years to 120 years & fines of $150,000; pursuant to R.C. 2929.41E [*sic*] will be limited to aggregate minimum term of 15 years to Lorain Correctional Institution, full restitution to all victims; consecutive to CR–265744."

The trial court thereafter sentenced defendant in case No. CR–265744 to the following consecutive sentences, *viz.*: (1) eighteen months and a $2,500 fine on each of the two forgery counts; (2) eighteen months and a $2,500 fine on each of the two uttering counts; and (3) five to fifteen years and a $7,500 fine on the second-degree felony theft count. The trial court's sentencing order in case No. CR–265744, journalized October 10, 1991, concluded as follows:

"Total 11 years to 15 years at Lorain Correctional Institution & fines of $17,500.00, consecutive to CR–271171. Incarceration time suspended to provide incentive for full restitution & assure the Court that there are no hidden funds; 5 years probation to be served while incarcerated. Full restitution & payment of all fines to be determined by Probation Department in conjunction with FBI, State of Ohio, & Probate Court. Failure to make restitution & pay all fines will result in original sentence being imposed consecutive to CR–271171."

Defendant filed timely notices of appeal from the sentences imposed by the trial court in case Nos. CR–265744 and CR–271171. The court of appeals assigned case Nos. 62652 and 62689 to these appeals, respectively. This court thereafter granted defendant's motion to consolidate the two appeals which jointly raise eight assignments of error.

Defendant's first assignment of error follows:

"The trial court abused its sentencing discretion in not considering the mandatory factors set forth in R.C. 2929.12(A) and imposing an excessive sentence."

Defendant's first assignment of error lacks merit.

Defendant contends the trial court erred by failing to consider the statutory factors set forth in R.C. 2929.12(A) prior to imposing the maximum five-year minimum indefinite sentence on him in connection with each of his eight second-degree felony convictions in the two cases *sub judice*. R.C. 2929.11(B)(5) establishes the following range of indefinite sentences for these offenses as follows:

"For a felony of the second degree, the minimum term shall be two, three, four, or five years, and the maximum term shall be fifteen years."

R.C. 2929.12(A) governs the trial court's discretion concerning the minimum term of an indefinite sentence within this range and provides as follows:

"(A) In determining the minimum term of imprisonment to be imposed for a felony for which an indefinite term of imprisonment is imposed, the court shall consider the risk that the offender will commit another crime and the need for protecting the public from the risk; the nature and circumstances of the offense; the victim impact statement prepared pursuant to section 2947.051 of the Revised Code, if a victim impact statement is required by that section; and the history, character, and condition of the offender and his need for correctional or rehabilitative treatment."

It is well established, contrary to defendant's argument, that a trial court is not required to expressly state on the record that it considered the factors set forth in R.C. 2929.12 prior to sentencing. *State v. Cyrus* (1992), 63 Ohio St.3d 164, 586 N.E.2d 94; *State v. Adams* (1988), 37 Ohio St.3d 295, 525 N.E.2d 1361. In fact, contrary to defendant's argument, both these cases hold that "a silent record raises the presumption that a trial court considered these factors contained in R.C. 2929.12." *Id.* at paragraph three of the syllabus.

The record in the cases *sub judice* is not silent and affirmatively demonstrates the trial court considered these factors based on information contained in defendant's presentence report, letters and oral statements prior to imposing a particularized sentence on defendant commensurate with his crimes. The presentence report has not been made part of the record on appeal; however, each of the challenged indefinite minimum sentences falls within the statutory sentencing guidelines. See *State v. Koons* (1984), 14 Ohio App.3d 289, 290, 14 OBR 345, 346–347, 470 N.E.2d 922, 923. Under the circumstances, defendant has failed to demonstrate that the trial court ignored the statutory factors prior to exercising its discretion and imposing sentence. *Id.*

We decline defendant's invitation to reweigh the statutory factors and substitute our judgment for that of the trial court concerning the minimum period of incarceration for these offenses. See *State v. McCool* (1988), 46 Ohio App.3d 1, 544 N.E.2d 933. Under the circumstances, defendant has failed to demonstrate the trial court erred or abused its discretion by imposing the maximum five-year minimum term of incarceration for each of defendant's eight second-degree felony theft convictions.

Accordingly, defendant's first assignment of error is overruled.

Defendant's second assignment of error follows:

"The trial court abused its sentencing discretion in not considering the statutory aggravating and mitigating factors set forth [in] R.C. 2929.12(B) & (C) and R.C. 2929.13(A) & (B) and imposing an excessive sentence."

Defendant's second assignment of error lacks merit.

Defendant likewise contends the trial court erred by failing to consider various mitigating factors presented by defendant prior to imposing the maximum possible definite sentences on him in connection with his other twenty-nine third- and fourth-degree felony convictions.

R.C. 2929.11(D) establishes the penalties applicable to third- and fourth-degree felonies in the cases *sub judice* as follows:

"(1) For a felony of the third degree, the term shall be one, one and one-half, or two years;

"(2) For a felony of the fourth degree, the term shall be six months, one year, or eighteen months."

R.C. 2929.12 and 2929.13 recognize the trial court's discretion concerning the imposition of definite sentences within this statutory range in a particular case. R.C. 2929.12 establishes a non-exhaustive list of sentencing criteria in felony cases generally and provides in pertinent part as follows:

"(B) The following do not control the court's discretion, but shall be considered in favor of imposing a longer term of imprisonment for a felony for which an indefinite term of imprisonment is imposed:

"(1) The offender is a repeat or dangerous offender;

"(2) Regardless of whether the offender knew the age of the victim, the victim of the offense was sixty-five years of age or older, permanently and totally disabled, or less than eighteen years of age at the time of the commission of the offense;

"(3) The victim of the offense has suffered severe social, psychological, physical, or economic injury as a result of the offense.

"(C) The following do not control the court's discretion, but shall be considered in favor of imposing a shorter minimum term of imprisonment for a felony for which an indefinite term of imprisonment is imposed:

"(1) The offense neither caused nor threatened serious physical harm to persons or property, or the offender did not contemplate that it would do so;

"(2) The offense was the result of circumstances unlikely to recur;

"(3) The victim of the offense induced or facilitated it;

"(4) There are substantial grounds tending to excuse or justify the offense, though failing to establish a defense;

"(5) The offender acted under strong provocation;

"(6) The offender has no history of prior delinquency or criminal activity, or has led a law-abiding life for a substantial time before commission of the present offense;

"(7) The offender is likely to respond quickly to correctional or rehabilitative treatment.

"(D) The criteria listed in divisions (B) and (C) of this section do not limit the matters that may be considered in determining the minimum term of imprisonment to be imposed for a felony for which an indefinite term of imprisonment is imposed."

R.C. 2929.13 states various non-exhaustive sentencing criteria applicable to third- and fourth-degree felonies and similarly provides as follows:

"(A) The following do not control the court's sentencing decision, but shall be considered in favor of imposing a shorter term of imprisonment when determining the term of imprisonment for a felony of the third or fourth degree for which a definite term of imprisonment is imposed:

"(1) The offense was the result of circumstances unlikely to recur;

"(2) The victim of the offense induced or facilitated it;

"(3) There are substantial grounds tending to excuse or justify the offense, though not sufficient to establish a defense;

"(4) The offender acted under strong provocation;

"(5) The offender has no history of prior delinquency or criminal activity, or has led a law-abiding life for a substantial time before commission of the present offense;

"(6) The offender is likely to respond quickly to correctional or rehabilitative treatment.

"(B) The following do not control the court's sentencing decision, but shall be considered in favor of imposing a longer term of imprisonment when determining the term of imprisonment for a felony of the third or fourth degree for which a definite term of imprisonment is imposed:

"(1) The defendant, by the duties of his office or by his position, was obliged to prevent the particular offense committed or to bring the offenders committing it to justice;

"(2) The defendant held public office at the time of the offense, and the offense related to the conduct of that office;

"(3) The defendant utilized his professional reputation or position in the community to commit the offense, or to afford him an easier means of committing it, in circumstances where his example probably would influence the conduct of others.

"(C) The criteria listed in divisions (A) and (B) of this section do not limit the matters that may be considered in determining the term of imprisonment to be imposed for a felony of the third or fourth degree for which a definite term of imprisonment is imposed."

■ Similar principles to those discussed in connection with defendant's first assignment of error apply in the context of the remaining definite sentences imposed by the trial court in the cases *sub judice*. Based on the record *sub judice*, defendant has likewise failed to demonstrate the trial court ignored any statutory mitigating circumstances prior to imposing its sentences in the cases *sub judice*. *State v. Taylor* (1992), 76 Ohio App.3d 835, 603 N.E.2d 401; *State v. Bivens* (1988), 49 Ohio App.3d 75, 550 N.E.2d 497; *State v. McCool, supra*.

The record demonstrates contrary to defendant's argument that the trial court did not impose the maximum potential sentence on defendant for each third- and fourth-degree felony conviction in the cases *sub judice*. The record demonstrates defendant pleaded guilty to eighteen third-degree felony theft counts involving more than $5,000 and less than $100,000 each. Although R.C. 2929.11(D)(1) authorized the trial court to sentence defendant to a term of imprisonment for up to two years on each offense, the record demonstrates the trial court imposed one and one-half year terms in connection with three of the offenses.

■ Defendant's remaining contentions concerning the absence of statutory aggravating factors in the cases *sub judice* lack merit. The trial court specifically recognized the principal factor favoring lengthy prison terms was the fact that defendant misused his professional reputation and position in the community as an attorney to enable him to commit the offenses. See R.C. 2929.12(B)(3). The trial court noted that defendant misused his position as an attorney at law and

officer of the court and violated his position of confidence and trust while committing these criminal acts. This conclusion is supported by the following statement of one of the victims at the sentencing hearing:

"STEVE SWARDELL: * * * The day my aunt died, my sister and I went out to his [defendant's] office. And my father-in-law said, you really should be represented by a lawyer. And I said why? My sister said I should be able to trust this guy.

"And he sat down and he threw me a bunch of these papers. And he says, you don't have to worry about reading them. Just go ahead and sign it.

"I said to my sister, this doesn't feel right. I says, I actually talked to my attorney last night and he said bring me the papers and don't sign them.

"I remember that smart like grin on Mr. Hamann saying, what's the matter? Don't you trust me?"

Moreover, defendant's misuse of his knowledge of the probate court system, and role of trust as an attorney and professor of law enabled him to conceal his offenses from the victims so that he could continue to enrich himself at their expense and to acquire new clients whom he could victimize.

Another victim, before the court, directed her comments to defendant and described the impact of defendant's crimes against her as follows:

"AGNES LALLY: * * * I have suffered very much, Mr. Hamann, also my family.

"In July I had to undergo a heart catheterization because of the stress pains and the burden of carrying—taking, trying to take care of my best friend's estate."

■ Finally, the record also unambiguously demonstrates an additional statutory aggravating factor that at least one of defendant's victims, John Arthur Bowden, for whom a guardianship had been established, was less than eighteen years of age at the time defendant stole the funds entrusted to him. R.C. 2929.12(B)(2).

■ The record demonstrates the trial court discounted the mitigating factors presented by defendant concerning his prior law-abiding character and lack of criminal history since defendant committed and concealed his looting of the accounts entrusted to him and other crimes over a period of more than seven years. At the same time, the trial court expressed serious reservations concerning defendant's newfound commitment to provide restitution to his victims due to the fact that defendant took a family vacation trip to Hawaii with $5,000 in cash after he was confronted on the bank fraud charges by the FBI. Under the

circumstances, we are unable to find the trial court abused its discretion when sentencing defendant.

Accordingly, defendant's second assignment of error is overruled.

Defendant's third assignment of error follows:

"The trial court abused its sentencing discretion in ruling that maximum sentences imposed on all counts should run consecutively rather than concurrently in light of the similarity of offenses and mitigating factors existing and demonstrated in the record."

Defendant's third assignment of error lacks merit.

Defendant contends the trial court abused its discretion when ordering that his thirty-seven felony sentences, arising from similar theft, forgery and uttering offenses, be served consecutively.

This court has previously rejected this precise argument in the context of a case involving consecutive sentences for nine of ten distinct bribery offenses by a common pleas court official. See *State v. McCool, supra.* The *McCool* court recognized that a trial court has discretion whether to impose consecutive or concurrent sentences in a particular case. Defendant has failed to demonstrate the trial court abused its discretion by imposing consecutive sentences in the cases *sub judice.*

■ The record demonstrates that defendant perverted the justice system for his own private gain by committing thirty separate and distinct acts of theft against dozens of different victims during his administration of probate assets over a period spanning more than seven years. Defendant compounded this wrongdoing by forging the names of a probate court judge and other public officials in an effort to conceal his scheme and to provide him a continued opportunity to enrich himself.

■ Defendant's citation to *State v. Torres* (1986), 31 Ohio App.3d 118, 31 OBR 204, 508 N.E.2d 970, to support his argument to the contrary is misplaced. The court in *Torres* held that a defendant may not be sentenced to serve consecutive sentences for multiple convictions arising from allied offenses. However, the record *sub judice* demonstrates that defendant made no such allied offense argument in the trial court and, therefore, waived any such argument. *State v. Comen* (1990), 50 Ohio St.3d 206, 553 N.E.2d 640. Moreover, as noted above, even if defendant had properly raised his contention that his thirty theft offenses constituted allied offenses, the argument would have been properly rejected since each of defendant's offenses involved separate acts against distinct victims at different times. See *State v. McCool, supra.* As a result, under the circum-

stances, we are unable to find the trial court abused its discretion when imposing consecutive sentences on defendant in the cases *sub judice.*

Accordingly, defendant's third assignment of error is overruled.

Defendant's fourth assignment of error follows:

"The sentence imposed in case No. CR 271171 is contrary to law in that the trial court misapplied the provisions of R.C. 2929.41 (E)(3), concerning multiple sentences."

Defendant's fourth assignment of error lacks merit.

Defendant contends the trial court's sentence of eighty-four to one hundred twenty years in case No. CR–271171 is contrary to law since the trial court failed to properly apply the limitations set forth in R.C. 2929.41(E). R.C. 2929.41(E) provides in pertinent part as follows:

"(E) Consecutive terms of imprisonment imposed shall not exceed:

" * * * *

"(2) An aggregate minimum term of fifteen years, plus the sum of all three-year terms of actual incarceration imposed pursuant to section 2929.71 of the Revised Code and the sum of all six-year terms of actual incarceration imposed pursuant to section 2929.72 of the Revised Code, when the consecutive terms imposed are for felonies other than aggravated murder or murder;

"(3) An aggregate term of eighteen months, when the consecutive terms imposed are for misdemeanors."

It should be noted, however, that the trial court's sentencing order stated that defendant's minimum sentence in case No. CR–271171 was reduced to fifteen years pursuant to R.C. 2929.41 as follows:

"Total maximum term of incarceration of 84 years to 120 years & fines of $150,000; pursuant to R.C. 2929.41E [*sic*] will be limited to aggregate minimum term of 15 years to Lorain Correctional Institution, full restitution to all victims; consecutive to CR–265744."

The trial court stated that it imposed defendant's sentence in this manner to indicate the seriousness of defendant's crimes to the parole department. Moreover, we note that even if the trial court had erred in applying the limitations set forth in R.C. 2929.41, this court would be compelled to reject defendant's contention since R.C. 2929.41 is self-executing. *State v. White* (1985), 18 Ohio St.3d 340, 18 OBR 381, 481 N.E.2d 596 (citing *State v. Slider* [1980], 70 Ohio App.2d 283, 24 O.O.3d 387, 437 N.E.2d 5).

Based upon our review of the record, however, the trial court's calculation of the minimum period of defendant's incarceration is hereby reduced from the

eighty-four years specified above to eighty-three and one-half years since the record demonstrates that defendant's six-month sentence on the misdemeanor theft count was ordered to be served concurrently with the sentences imposed on the other offenses pursuant to R.C. 2929.41 rather than consecutively.

Accordingly, defendant's fourth assignment of error is overruled.

Defendant's fifth assignment of error follows:

"The trial court abused its sentencing discretion by imposing fines in the aggregate total of $157,500.00 upon an indigent defendant and without applying the mandatory factors of R.C. 2929.14."

Defendant's fifth assignment of error lacks merit.

Defendant contends the trial court improperly refused to consider his inability to pay prior to levying the fines against him in the cases *sub judice.* R.C. 2929.14 governs the imposition of fines in felony cases and provides in pertinent part as follows:

"(A) In determining whether to impose a fine for a felony and the amount and method of payment of a fine, the court shall consider the nature and circumstances of the offense, the victim impact statement prepared pursuant to section 2947.051 of the Revised Code, the history, character, and condition of the offender, and the ability and resources of the offender and the nature of the burden that payment of a fine will impose on him.

"(B) The court shall not impose a fine in addition to imprisonment for felony, unless a fine is specially adapted to deterrence of the offense or the correction of the offender, or the offense was committed with purpose to establish, maintain, or facilitate an activity of a criminal syndicate, as defined in section 2923.04 of the Revised Code, or the offense was committed for hire or for purpose of gain.

"(C) The court shall not impose a fine or fines for felony [*sic*] that, in the aggregate and to the extent not suspended by the court, exceed the amount that the offender is or will be able to pay by the method and within the time allowed without undue hardship to himself or his dependents, or will prevent him from making restitution or reparation to the victim of his offense."

■ There is no dispute concerning the trial court's authority to levy monetary fines within the applicable statutory limits against defendant since he committed the thirty-eight felony offenses in the two cases *sub judice* for the "purpose of gain" under R.C. 2929.14(B). See *State v. McCool, supra.* Defendant contends, however, that the trial court abused its discretion by imposing such fines in violation of R.C. 2929.14(C).

Under the circumstances, defendant has failed to demonstrate the trial court abused its discretion in imposing the challenged fines in the cases *sub judice.*

There is no dispute each of the fines imposed by the trial court falls within the statutory limits set forth in R.C. 2929.11(C). The record demonstrates, contrary to defendant's argument on appeal, that defendant failed to make any request of the trial court to make a finding of indigency prior to sentencing. See *Cleveland v. Fhiaras* (Apr. 16, 1992), Cuyahoga App. No. 61996, unreported, 1992 WL 80062; *Cleveland v. Atwood* (Mar. 22, 1990), Cuyahoga App. No. 56692, unreported, 1990 WL 32609.

The record demonstrates the trial court concluded defendant had the ability to pay the fines imposed since defendant did not demonstrate he had spent all the funds he had obtained from his crimes. Defendant admitted to crimes involving the misappropriation of more than $2,470,000 over a period of seven and one-half years from November 1983 to April 1991. Defense counsel denied that defendant still had over one million dollars in concealed assets. However, the unsworn, unaudited summary of expenditures submitted by defendant to the trial court was incomplete and covers only a three-year period for four financial accounts from January 1988 through 1991. Defendant's summary of expenditures for household expenses during the final three years contains fifteen months of approximately $285,000 in "estimated" expenses and the trial court noted that many of the expenditures allegedly made by defendant for horses were made in cash and not reflected on his checking account records.

Defendant likewise submitted almost no information concerning any assets accumulated by him during the course of the seven-year period of his thefts. Defendant claims that he tendered all his assets to pay restitution to his victims; however, the probate court receiver apparently valued the equity in these assets at only $200,000. Finally, although defendant alludes to various additional financial information, he failed to make the record of any probate court proceedings part of the record on this appeal.

Defendant's looting of and false accounting for the funds entrusted to him and subsequent acts of forgery to conceal his misappropriation of probate assets from the probate court and to further enrich himself at the expense of his clients are textbook cases of *crimen falsi* involving moral turpitude. See *Government of Virgin Islands v. Toto* (C.A.3, 1976), 529 F.2d 278, 281 (The term *crimen falsi* generally refers to crimes "in the nature of perjury or subornation of perjury, false statement, criminal fraud, embezzlement, false pretense or any other offense the commission of which involves some element of deceitfulness, untruthfulness, or falsification bearing on the accused's propensity to testify truthfully."); *Kornreich v. Indus. Fire Ins. Co.* (1936), 132 Ohio St. 78, 86, 7 O.O. 198, 201, 5 N.E.2d 153, 157 (*Crimen falsi* characterized broadly "as any crime which might injuriously affect the administration of justice by the introduction of falsehood and fraud."); *State v. Williams* (1992), 82 Ohio App.3d 70, 611 N.E.2d 443 (discussing

moral turpitude). Defendant's crimes involving false financial statements to his clients and forgery of probate court documents strongly reflect the element of *crimen falsi*, defendant's contempt for the administration of justice, character for dishonesty and lack of truthfulness.

Defendant's presentencing memorandum filed October 2, 1991 and unsworn statements during the sentencing hearing did not establish his indigency or inability to pay any fines. Cf. *State v. Graham* (Nov. 1, 1990), Cuyahoga App. No. 57622, unreported, 1990 WL 166457; *State v. Price* (Jan. 9, 1992), Cuyahoga App. No. 61731, unreported, 1992 WL 2575. The trial court was not required to accept as true defendant's "estimated" expenses or statements that he squandered all the stolen funds for horses and otherwise disposed of all his assets since the record demonstrates defendant's propensity to make false statements even under oath.

The record demonstrates the trial court was convinced from the information presented that defendant had not made a complete accounting for all the stolen funds and continued to possess hidden assets. The trial court stated that the only information concerning the losses resulting from defendant's crimes had come from defendant himself and "[i]t may be years before anyone knows exactly what happened with all the" funds entrusted to him. The record contains absolutely no statement made by defendant or any other person under oath at or prior to the time of sentencing indicating defendant's inability to pay any fines or alleged indigent status.

Defendant, who was represented in the common pleas court by two privately retained counsel, did not declare his indigency until after sentencing just prior to these appeals. Under the circumstances, defendant has failed to exemplify any error in the trial court's imposition of fines in the cases *sub judice*. It is ludicrous that a defendant who has stolen approximately $2.5 million now requests appellate counsel be appointed and the transcript of proceedings be furnished him at taxpayer expense for this appeal.

Accordingly, defendant's fifth assignment of error is overruled.

Defendant's sixth assignment of error follows:

"The judgment of the court which provides for incarceration for the anticipated failure to make all restitution and pay all fines, as set forth in journal entry dated October 10, 1991, violates this defendant's right to equal protection under the 14th Amendment to the U.S. Constitution."

Defendant's sixth assignment of error lacks merit.

Defendant contends for the first time on appeal that the trial court erred by imposing restitution as a condition of probation in case No. 265744 and providing

that defendant's failure to make restitution would result in the imposition of the trial court's original sentence.

Defendant's failure to raise this constitutional issue in the trial court warrants rejecting his belated claim. See *State v. Awan* (1986), 22 Ohio St.3d 120, 22 OBR 199, 489 N.E.2d 277. Moreover, even if defendant had properly raised this argument, it is well established that mandating restitution as a condition of probation is warranted under appropriate circumstances. See *State v. Woods* (1982), 7 Ohio App.3d 81, 7 OBR 94, 454 N.E.2d 554. Under the circumstances, defendant's challenge to this condition of probation is not ripe for adjudication in the case *sub judice* and should be raised only if defendant's probation is revoked based upon his failure to comply with this condition.

The *Woods* court recognized that where a probationer challenges a condition of probation based upon a claim of indigency, the probationer bears the burden of producing evidence demonstrating his indigency. *Id.* However, as noted above, the record demonstrates defendant produced absolutely no evidence to support his claim of indigency until after the trial court sentenced him in the cases *sub judice.* All the financial records and other information submitted by defendant prior to sentencing were not made under oath and were unaudited. Moreover, as noted in connection with defendant's fifth assignment of error, the trial court was certainly not required to accept the validity of all of the information or "estimated" expenses supplied by defendant. Under the circumstances and for the same reasons, defendant has failed to demonstrate the trial court abused its discretion in imposing this condition in the case *sub judice.*

Accordingly, defendant's sixth assignment of error is overruled.

Defendant's seventh assignment of error follows:

"The sentences imposed in CR 271171 and CR 265744 are excessive, cruel and unusual punishments and grossly disproportionate to the offenses and violate the Ohio Constitution, Article I, Sec. 9 and the 8th Amendment to the U.S. Constitution."

Defendant's seventh assignment of error lacks merit.

Defendant also contends for the first time on appeal that the trial court's sentences constitute cruel and unusual punishment in violation of the United States and Ohio Constitutions. Defendant complains that individual penalties for various violent felonies amount to less than those imposed by the trial court in the cases *sub judice.*

However, as noted above, defendant's failure to raise this constitutional issue in the trial court warrants rejecting this claim asserted for the first time on appeal. See *State v. Awan, supra.* Moreover, even if defendant had

properly raised this argument, it is well established that sentences do not violate these constitutional provisions against cruel and unusual punishment unless the sentences are so grossly disproportionate to the offenses as to shock the sense of justice in the community. *State v. Chaffin* (1972), 30 Ohio St.2d 13, 59 O.O.2d 51, 282 N.E.2d 46; *State v. Jarrells* (1991), 72 Ohio App.3d 730, 596 N.E.2d 477.

Defendant has failed to demonstrate that the statutory punishments prescribed for any of his thirty-eight individual theft, forgery and uttering offenses, or the cumulative punishment actually imposed upon him in the case *sub judice,* is so greatly disproportionate to his crimes so as to shock the sense of justice in the community. Although as defendant notes none of his "white collar" convictions involved the use of violence, his argument completely overlooks the fact that he was sentenced for admittedly committing thirty-eight distinct offenses over the course of seven years rather than just one single offense.

Defendant argued in the trial court that four weeks of imprisonment in the county jail prior to sentencing were appropriate punishment for his crimes and that he should receive probation to enable him to make restitution to his victims. However, as noted above, the trial court stated the principal reason accounting for the incarceration imposed in the cases *sub judice* was that defendant's looting of millions of dollars in probate assets entrusted to him by dozens of victims violated his position of trust and confidence and subverted the administration of justice. The trial court commented as follows concerning defendant's predatory conduct against his clients:

"It is clear to this Court that but for your position as a probate lawyer, these crimes either would not have been committed or would have been detected earlier prior to the grave devastation and loss suffered by the many victims present here today."

Defendant's abuse of his position as an attorney and officer of the court corrupted the administration of justice and disgraced the entire legal profession. The record demonstrates defendant compounded his crimes by forging the names of public officials to conceal his widespread wrongdoing and further enrich himself so that he and his family could continue to indulge the extravagantly luxurious lifestyle to which they had become accustomed at the expense of his clients. It offends no principle of justice for the trial court to discount defendant's expressed newfound commitment to restitution and to impose such penalties in the face of such predatory misconduct.

Accordingly, defendant's seventh assignment of error is overruled.

Defendant's eighth assignment of error follows:

"The sentences imposed in CR 271171 and CR 265744 are the result of bias, prejudice, [and] predisposition and are not supported by facts and evidence in the record."

Defendant's eighth assignment of error lacks merit.

■■■ Defendant finally contends the trial court's sentences resulted from judicial bias and were based upon matters not in the record. Defendant specifically contends the trial court improperly discounted information that defendant did not continue to possess hidden assets.

However, as noted above, the unsworn and unaudited financial account information submitted to the trial court by defendant related only to the disposition of various banks' accounts over a three-year period from 1988 to 1991. Defendant failed to provide any similar records concerning his assets, accounts or other financial information concerning the period from 1983 to 1988 when he admitted that some of the offenses were committed. The trial court was warranted in considering the nature of defendant's crimes and not required to accept as true defendant's "estimated" expenses or unsworn statements concerning his disposition of the funds that he stole, his allegedly legitimate income or other assets.

The record amply supports the trial court's conclusion that defendant revealed little or no concern for the dozens of people he victimized and that his remorse was only for himself and his family. Under the circumstances, defendant has failed to demonstrate the trial court based its decision on matters not appearing in the record.

Accordingly, defendant's eighth assignment of error is overruled.

We find the trial court neither abused its discretion nor was biased in any manner in the sentences which it imposed, but rather, agree with the sentences based on the material contained in the record.

*Judgment affirmed as modified.*

BLACKMON, P.J., and PORTER, J., concur.