OPINION
{¶ 1} Defendant-Appellant, Grover F. Durham, appeals a judgment of the Montgomery County Common Pleas Court finding him guilty of two counts of assault of a peace officer, and sentencing him to twenty-four months in prison. Durham asserts that the trial court erred in not granting his Crim. R. 29 motion; that his conviction is contrary to the manifest weight of the *Page 2 
evidence, and that the trial court erred in sentencing him. Finding that there was no constitutional violation sufficient to excuse Durham's conduct; that his conviction was not contrary to the manifest weight of the evidence; and that the trial court did not err in imposing sentence, we affirm the judgment of the trial court.
 {¶ 2} In the late afternoon hours of August 27, 2004, in response to a 9-1-1 call, Officers Dine and Mollohan of the Dayton Police Department went to Durham's residence at 4521 Apple Tree Court. The information that the officers had was that Durham intended to commit suicide by hanging himself in his back bedroom. When they arrived, Durham answered the door and it was apparent that he was in a highly agitated state. Durham conceded that he intended to commit suicide, and the officers asked if they could take him to get some help.
 {¶ 3} At that time, Officer Smith, a crisis intervention officer of the police department arrived. While Dine and Mollohan were briefing Smith, Durham's mother called the residence. Durham answered the phone and gave it to Officer Dine. Durham's mother indicated that she was a retired officer of the Dayton Police Department; that she had made the 9-1-1 call, and she asked the officers to give her son the phone number to the suicide prevention line. Dine told Durham's mother that they intended to do better than that; that they would take him to a medical facility for treatment. The conversation ended when Durham's level of agitation escalated.
 {¶ 4} At this point, Durham re-entered his residence, and the officers followed him in. Durham continued to insist that he wanted to commit suicide and that he did not want any medical help. He then told the officers he wanted them to leave and he became aggressive toward the officers. Durham threatened the officers physically if they attempted to put their hands on him. After he again demanded that they leave his residence, Officer Smith decided to secure Durham and *Page 3 
remove him to a medical facility.
 {¶ 5} When Officers Smith and Dine attempted to restrain Durham, Durham became violent both verbally and physically toward the officers. Officer Mollohan tased Durham, but the taser had no effect on him. During the ensuing altercation, Officer Smith hit the panic button on his radio to send a signal out that an officer needs emergency assistance.
 {¶ 6} In response to Smith's radio signal, two additional officers, Bucci and Bell, showed up at the scene. The altercation continued to escalate and Durham got Officer Bucci in a chokehold that the other officers could not get him to release. Officer Mollohan finally stunned Durham who then released Bucci. He was then handcuffed and escorted from his home. At about that time, Durham's mother and another police officer, Letlow arrived at the scene, and when the officers would not release Durham to talk to his mother, he kicked Officer Letlow in the groin. Durham was then placed in the EMS vehicle and transported to the hospital.
 {¶ 7} Durham was subsequently indicted for two counts of assault of a police officer, in violation of R.C. 2903.13(A),(C)(3). Durham proceeded to a jury trial where he was found guilty of both counts and was thereafter sentenced to twenty-four months in prison. It is from this conviction that Durham brings this timely appeal, asserting three assignments of error for our review.
 "First Assignment of Error {¶ 8} "THE TRIAL COURT ERRED BY FAILING TO DISMISS THE 2 COUNTS AGAINST APPELLANT PURSUANT TO CRIMINAL RULE 29"
 {¶ 9} Durham asserts in his first assignment of error that the trial court erred in not entering a judgment of acquittal at the close of the state's evidence on the basis that he claims his fourth *Page 4 
amendment rights were violated by the officer's uninvited and warrantless entry into his home.
 {¶ 10} Durham argues that because the police officers unlawfully entered his home that they were unlawfully arresting him and that he therefore had the right to resist this unlawful arrest.
 {¶ 11} Even if we assume that the officer's entry into Durham's home is unlawful, Durham's argument must still fail. While a person may lawfully refuse to consent to a warrantless entry, this right to refuse entry is limited. State v. Howard (1991), 75 Ohio App.3d 760, 771,600 N.E.2d 809, citing Middleburg Heights v. Theiss (1985),28 Ohio App.3d 1, 501 N.E.2d 1226. In spite of the fact that an officer has unlawfully entered a private residence, the occupant is not privileged to assault the officers after this unlawful entry. Id. While an occupant can refuse to consent to an entry by "locking or closing the door or physically placing one's self in the officer's way," such refusal cannot include violence against an officer. Id at 772.
 {¶ 12} Additionally, unlike the situation where a defendant is charged with resisting arrest, a lawful arrest is not an element of assault on a peace officer, which prohibits one from knowingly causing or attempting to cause physical harm to a peace officer. R.C. § 2903.13(A),(C)(3). See e.g. State v. Christian, Mahoning App. No. 02 CA 170, 2005-Ohio-1440;State v. Newsome, Ashtabula App. No. 2003-A-0076, 2005-Ohio-3775.
 {¶ 13} Therefore, the first assignment of error is overruled.
 "Second Assignment of Error {¶ 14} "THE TRIAL COURT FAILED TO CONSIDER 2929.11, 2929.12, 2929.13 AND THE PRESENTENCE INVESTIGATION REPORT AND WAS REQUIRED TO DO SO"
 {¶ 15} In this assignment, Durham argues, without any supporting evidence, that the trial *Page 5 
court failed to carry out its statutory duties to consider these code sections and the PSI report.
 {¶ 16} A trial court has broad discretion in sentencing a defendant and a reviewing court will not interfere with the sentence unless the trial court abused its discretion. State v. Lytle (July 31, 1998), Montgomery App. No. 97 CA 100, citing State v. Yontz (1986),33 Ohio App.3d 342, 343, 515 N.E.2d 1012. The term "abuse of discretion" implies that the court's attitude is unreasonable, arbitrary, or unconscionable.Blakemore v. Blakemore (1983), 5 Ohio St.3d 54, 450 N.E.2d 1140. A court will not be found to have abused its discretion in sentencing if the sentence it imposes is within the statutory limits. State v. Burge
(1992), 82 Ohio App.3d 244, 249, 611 N.E.2d 866.
 {¶ 17} In exercising its discretion, however, the trial court must consider the factors set forth in R.C. 2929.11, 2929.12 and 2929.13. But, the trial court is not required to expressly state on the record that it considered these statutorily enumerated sentencing factors.State v. Mathews (Oct. 15, 1998), Cuyahoga App. No. 73303. Where the record is silent there exists a presumption that the trial court has considered the factors. State v. Adams (1988), 37 Ohio St.3d 295, 297,525 N.E.2d 1361. Further, where a criminal sentence is within statutory limits, an appellate court should accord the trial court the presumption that it considered the statutory mitigating factors. State v.Taylor (1992), 76 Ohio App.3d 835, 839, 603 N.E.2d 401; State v.Crouse (1987), 39 Ohio App.3d 18, 20, 528 N.E.2d 1283. Consequently, the appellant has an affirmative duty to show otherwise.
 {¶ 18} Moreover, the defendant bears the burden to show that the sentencing court failed to consider appropriate criteria. In State v.Cyrus (1992), 63 Ohio St.3d 164,166, 586 N.E.2d 94, the Ohio Supreme Court stated:
 {¶ 19} "Nothing in the statute or the decisions of this court imposes any duty on the trial court to set forth its reasoning. The burden is on the defendant to come forward with evidence to *Page 6 
rebut the presumption that the trial court considered the sentencing criteria." In the instant case, we presume that the trial court considered the appropriate statutory factors. Durham has failed to provide this reviewing court with a transcript of the sentencing hearing, and therefore he has failed to demonstrate any error in this regard.
 {¶ 20} Based on the foregoing, we find no indication of an abuse of discretion on the part of the trial court in imposing the consecutive sentences herein. Durham has failed to demonstrate that the trial court did not consider the appropriate sentencing factors.
 {¶ 21} Durham's second assignment of error is overruled.
 "Third Assignment of Error {¶ 22} "THE VERDICT BY THE JURY WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 23} Durham finally asserts, in his third assignment of error that his convictions were against the manifest weight of the evidence.
 {¶ 24} When an appellate court analyzes a conviction under the manifest weight standard it must review the entire record, weigh all of the evidence and all of the reasonable inferences, consider the credibility of the witnesses and determine whether in resolving conflicts in the evidence, the fact finder clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. State v. Thompkins,78 Ohio St.3d 380, 387, 678 N.E.2d 541, quoting State v. Martin (1983),20 Ohio App.3d 172, 175, 485 N.E.2d 717. Only in exceptional cases, where the evidence "weighs heavily against the conviction," should an appellate court overturn the trial court's judgment. Id.
 {¶ 25} Durham was charged in each count of the indictment with committing assault on a *Page 7 
police officer, under R.C. 2903.13(A),(C)(3). The essential elements of this offense, that the state had to prove, were that Durham knowingly caused or attempted to cause physical harm to a police officer. In the first count, the officer is identified as Officer Bucci, and in the second count, it is Officer Letlow.
 {¶ 26} Durham argues that the testimony of Officer Smith was incredible; that there was insufficient evidence of Durham's intent to harm any officer; that there was a difference between the testimony of Officers Smith and Bucci as to which arm Durham was using to choke Bucci with; and that Durham's mother testified that she did not see her son kick Officer Letlow.
 {¶ 27} In reviewing the evidence as to count one, the assault on Officer Bucci, even ignoring the testimony of Officer Smith, it is apparent that every other person on the scene at the time in question, Officers Bucci, Bell, Dine, and Mollohan testified as to the assault perpetrated by Durham on Bucci. No other witnesses besides Durham were present during this assault.
 {¶ 28} Likewise, in reviewing the evidence as to the second count, the assault on Officer Letlow, every officer on the scene testified as to the fact that Durham mile-kicked Letlow in the groin. Additionally, Officer Dine testified that in the paddy wagon, Durham admitted to kicking Letlow, claiming it was because Letlow was pulling on his handcuffs. While Durham's mother and aunt were present during this assault, neither testified unequivocally that it did not occur. Each testified that they did not see the assault. And, Durham's mother testified that she did see his face contort and that he moved backwards at the time of the alleged assault of Letlow.
 {¶ 29} After having reviewed the entire record and having considered all of the *Page 8 
conflicting evidence, we cannot say that the jury clearly lost its way in finding that Durham knowingly assaulted both Officers Bucci and Letlow.
 {¶ 30} Accordingly, Durham's third assignment of error is overruled.
 {¶ 31} For the foregoing reasons, the judgment of the Montgomery County Common Pleas Court is hereby affirmed.
BROGAN, J. and GRADY, J., concur.
(Hon. Sumner E. Walters retired from the Third District Court of Appeals sitting by assignment of the Chief Justice of the Supreme Court of Ohio). *Page 1