OPINION
Defendants-appellants, Scott Nicholas, Kenneth Sandlin, Glen Azbill, Douglas Tirey, Harold Pember, Joel Madgett, and James Boggs (collectively referred to as "Appellants"), appeal decisions of the Warren County Court of Common Pleas adjudicating them sexual predators. Appellee/cross-appellant, the state of Ohio, appeals the decision of the Warren County Court of Common Pleas denying its motion to find defendant-appellant, Joseph Noe ("also referred to in our reference to "Appellants"), a sexual predator.
R.C. Chapter 2950 establishes a procedure for classifying criminal offenders who have been convicted and sentenced for various sexually oriented offenses. The statute also creates a comprehensive registration and community notification scheme which must be followed. R.C. 2950.04 et. seq.[1]
R.C. 2950.09 contains the procedures for classifying an offender convicted and sentenced for a sexually oriented offense as a sexual predator. The classification procedure which applies to appellants is found in R.C. 2950.09(C)(1), and provides that offenders who were convicted of or pled guilty to a sexually oriented offense prior to January 1, 1997, were sentenced before January 1, 1997, and were serving a term of imprisonment on or after January 1, 1997, may be adjudicated as sexual predators. A sexual predator is defined as "a person who has been convicted of or pleaded guilty to committing a sexually oriented offense and is likely to engage in the future in one or more sexually oriented offenses." R.C. 2950.01(E). All of the appellants in the case at bar were convicted and sentenced for sexually oriented offenses prior to January 1, 1997, and all but Noe were determined to be sexual predators pursuant to R.C. 2950.09(C)(1).
Nicholas was found guilty following a jury trial of felonious sexual penetration, kidnapping, gross sexual imposition, and two counts of rape. On January 7, 1991, Nicholas was sentenced to ten to twenty-five years on all counts to be served concurrently. Sandlin was found guilty following a bench trial of kidnapping, aggravated murder with a specification that it was committed while he was committing or attempting to commit rape, and three counts of rape. On April 9, 1979, Sandlin was sentenced to life imprisonment and seven to twenty-five years for each of the remaining counts.[2]
Azbill pled guilty to two counts of rape pursuant to a plea agreement and on September 20, 1988, was sentenced to seven to twenty-five years in prison with seven years actual incarceration. Tirey was found guilty following a jury trial of seven counts of rape and on May 11, 1992, was sentenced to life imprisonment on count one and eight to twenty-five years on each of the remaining six counts, to be served concurrently. Pember pled guilty to five counts of rape in accordance with a plea bargain and on May 9, 1990, was sentenced to seven to twenty-five years for each count to be served concurrently.
Madgett pled guilty to sexual battery with a prior offense specification and on January 26, 1988, was sentenced to two and one-half to ten years imprisonment. Boggs pled guilty to gross sexual imposition and five counts of attempt to commit aggravated rape. On December 12, 1989, Boggs was sentenced to three to fifteen years for gross sexual imposition and each of four counts of attempt to commit aggravated rape and eighteen months for one count of attempt to commit aggravated rape.[3] Noe pled guilty to two counts of rape and on January 2, 1991, was sentenced to five to twenty-five years imprisonment.
In March 1997, the Department of Rehabilitation and Corrections recommended that appellants be determined to be sexual predators pursuant to R.C. Chapter 2950. Appellants filed motions to dismiss and motions to declare the provisions of R.C. Chapter 2950 unconstitutional. Noe and Pember moved to withdraw their guilty pleas due to the subsequent amendment of R.C. Chapter 2950. Following hearings in each particular case, and after consideration of the factors enumerated in R.C. 2950.09(B)(2), the trial court found by clear and convincing evidence that all of the appellants except Noe were likely to engage in a sexually oriented offense in the future and adjudicated appellants as sexual predators pursuant to R.C. 2950.09(C)(2). The trial court found that the state had failed to prove by clear and convincing evidence that Noe is a sexual predator and did not so adjudicate Noe. The trial court also overruled Noe and Pember's motions to withdraw their guilty pleas.
Appellants now appeal, setting forth the following assignments of error:[4]
Assignment of Error No. 1:
 Classification of Appellants as sexual predators, the duty to register and notification procedures of revised R.C. 2950.01 et. [sic] seq., are in violation of the ex post facto clause of the United States Constitution.
Assignment of Error No. 2:
 Classification of Appellants as sexual predators, the duty to register and notification procedures of revised R.C. 2950.01 et. [sic] seq., are in violation of the retroactive clause of the Ohio Constitution.
Assignment of Error No. 3:
 Classification of Appellants as sexual predators, the duty to register and notification procedures of revised R.C. 2950.01 et. [sic] seq., violates Appellants' rights to equal protection under the United States Constitution.
Assignment of Error No. 4:
 The hearings to have Appellants declared sexual predators constitute double jeopardy.
Assignment of Error No. 5:
 The notification provisions of R.C. 2950.01 et. [sic] seq., are cruel and unusual punishment, and are a violation of the Appellants' constitutional rights to liberty and safety.
Assignment of Error No. 6:
 The decision of the trial court is not supported by the evidence.
Assignment of Error No. 7:
 The registration and notification procedures in R.C. 2950.01 et. [sic] seq., violate Appellants' plea agreements, and the trial court erred in not granting the motion to withdraw the plea.
Assignment of Error No. 8:
 Appellants are entitled to be sentenced under the revised sentencing laws of Senate Bill 2.
Pember sets forth the following assignments of error in a separate brief:
Assignment of Error No. 1:
 CLASSIFICATION OF APPELLANT AS A SEXUAL PREDATOR; REQUIRING HIM TO REGISTER; AND SUBJECTING HIM TO THE NOTIFICATION PROCEDURES OF R.C. 2950.01 ET SEQ. VIOLATES THE RETROACTIVE LAW PROVISION OF SECTION 28 ARTICLE II OF THE OHIO CONSTITUTION.
Assignment of Error No. 2:
 CLASSIFICATION OF APPELLANT AS A SEXUAL PREDATOR; REQURING [sic] HIM TO REGISTER; AND SUBJECTING HIM TO THE NOTIFICATION PROCEDURES OF R.C. 2950.01 ET SEQ [sic] VIOLATES THE EX POST FACTO CLAUSE OF SECTION 10 ARTICLE I OF THE UNITED STATES CONSTITUTION.
Assignment of Error No. 3:
 THE TRIAL COURT ERRED IN NOT GRANTING THE MOTION OF APPELLANT TO WITHDRAW HIS PLEA AS THE REGISTRATION AND NOTIFICATION PROCEDURES IN REVISED CODE 2950.01 ET SEQ. VIOLATE CRIMINAL RULE 11 AND HIS PLEA AGREEMENT.
Assignment of Error No. 4:
 THE DECISION OF THE TRIAL COURT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
Assignment of Error No. 5:
 THE TRIAL COURT ERRED IN PROCEEDING TO A HEARING UNDER R.C. 2950 ET SEQ. SAID HEARING CONSTITUTED DOUBLE JEOPARDY.
Assignment of Error No. 6:
 THE PROVISIONS OF REVISED CODE 2950.01 ET SEQ. WHICH RELATE TO APPELLANT VIOLATES CODE 1.58
AND MUST BE DECLARED VOID.
Assignment of Error No. 7:
 CLASSIFICATION OF APPELLANT AS SEXUAL PREDATORS, THE DUTY TO REGISTER AND NOTIFICATION PROCEDURES OF REVISED R.C. SECTION 2950.01 ET SQ. [sic] VIOLATES APPELLANTS' RIGHTS TO EQUAL PROTECTION UNDER THE UNITED STATES CONSTITUTION.
In addition, the state of Ohio filed a notice of cross appeal from the trial court's determination that Noe is not a sexual predator, but did not file a brief with this court.[5]
In their first assignment of error, appellants contend that the sexual predator classification procedure and the attendant duties of registration and notification found in R.C. 2950.01 et seq. violate the Ex Post Facto Clause of the United States Constitution. This court considered and rejected this argument in State v. Lyttle (Dec. 22, 1997), Butler App. No. CA97-03-060, unreported. In Lyttle, this court held that the classification of a person as a sexual predator pursuant to R.C. 2950.09(C) does not violate the Ex Post Facto Clause of the United States Constitution because "the classification scheme and attendant registration, verification, and notification provisions set forth in R.C. Chapter 2950 are not punitive." Lyttle at 22. Therefore, appellants' first and Pember's second assignments of error are overruled.
In their second assignment of error, appellants contend that the sexual predator classification procedure and the attendant duties of registration and notification found in R.C. 2950.01 et seq. violate the retroactive clause of the Ohio constitution. This court also considered and rejected this argument in Lyttle and held that R.C. Chapter 2950 does not violate the Ohio constitutional prohibition against retroactive legislation because "application of R.C. Chapter 2950 does not impair or take away any vested rights, affect an accrued substantive right, or impose new or additional burdens, duties, obligations or liabilities based upon past conduct." Lyttle at 28. Accordingly, appellants' second and Pember's first assignments of error are overruled.
In their third assignment of error, appellants contend that the sexual predator classification procedure and the attendant duties of registration and notification found in R.C. 2950.01 et seq. violate the Equal Protection Clause of the United States Constitution. Appellants argue that the sexual predator statute violates the Equal Protection Clause because it treats differently those persons, in their position, who were convicted of a sexually oriented offense and remain incarcerated after January 1, 1997, from those persons convicted of the same offenses but released from prison before January 1, 1997.
The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution states that "[n]o State shall * * * deny to any person within its jurisdiction the equal protection of the laws." The Equal Protection Clause "ensures that no person or class of persons shall be denied the same protection of the laws as is enjoyed by other persons or classes in the same locale or under the same circumstances." State v. Earlenbaugh (1985),18 Ohio St.3d 19, 22. A statutory classification that involves neither a fundamental right nor a suspect class and "bears a rational relationship to a legitimate governmental interest," does not violate the Equal Protection Clause of the federal constitution. Adkins v. McFaul (1996), 76 Ohio St.3d 350, 351. This form of scrutiny, known as the "rational-basis" test, is the most relaxed. Wagner v. Armbruster (1996), 108 Ohio App.3d 719,731. Case law establishes that the rational basis test is appropriate for prisoners. State v. Chappell (Feb. 24, 1998), Franklin App. Nos. 97APA04-543, 97APA05-636, unreported.
Under the rational-basis test, a statute will be upheld by a reviewing court unless it involves a classification that is completely irrelevant to the "achievement of the state's purpose." Menefee v. Queen City Metro (1990), 49 Ohio St.3d 27,29. Thus, if a statutory classification arbitrarily treats similarly situated people in a different manner, it violates the Equal Protection Clause. Adamsky v. Buckeye Local School Dist. (1995), 73 Ohio St.3d 360, 362.
According to R.C. 2950.02(A)(2), the Ohio legislature determined that "[s]exual predators and habitual sex offenders pose a high risk of engaging in future offenses even after being released from imprisonment" and protecting the public from such offenders "is a paramount governmental interest." The legislature, therefore, declared its intent in enacting R.C. Chapter 2950 to be "to protect the safety and general welfare of the people of this state." R.C. 2950.02(B).
The First District Court of Appeals has held that the sexual predator law does not violate the Equal Protection Clause. State v. Lance (Feb. 13, 1998), Hamilton App. Nos. C-970301, C-970282, C-970283, unreported. In so holding, the Lance court reasoned as follows:
 The protection of the public from sex offenses is, without a doubt, a legitimate state interest. In all of the cases before us, the courts found the offenders to be sexual predators. The legislature specifically defined a sexual predator as an offender who "is likely to engage in the future in one or more sexually oriented offenses." It has also specifically concluded that such an offender poses a high risk of recidivism. The registration and notification requirements accompanying a sexual predator finding clearly advance the legislature's stated goal of protecting the public. A reasonable ground exists for distinguishing between sexual predators and other offenders, and we cannot conclude that the sexual-predator classification is so arbitrary and invidious as to violate the Equal Protection or Due Process Clause.
Lance at 29-30 (Citations omitted). The Tenth District Court of Appeals reached the same conclusion, while considering the exact issue raised by appellants in this case, in Chappell, Franklin App. Nos. 97APA04-543, 97APA05-636, unreported.
We conclude that the sexual predator classification scheme found in R.C. 2950.09(C) does not violate the Equal Protection Clause. The statute treats all offenders who are still imprisoned on January 1, 1997 the same and under the rational-basis test, it bears a rational relationship to a legitimate governmental interest, namely, to protect the public from sex offenders. See Chappell, Franklin App. Nos. 97APA04-543, 97APA05-636, unreported; Lance, Hamilton App. Nos. C-970301, C-970282, C-970283, unreported. Appellants' third and Pember's seventh assignments of error are overruled.
In their fourth assignment of error, appellants contend that the hearings to have them declared sexual predators violate the Double Jeopardy Clause. This court has considered and rejected this argument in State v. Naegele (Jan. 12, 1998), Clermont App. No. CA97-04-043, unreported. In Naegele, we held, based upon our determination in Lyttle, that the sexual predator law does not constitute punishment, "imposition of the law cannot violate the Double Jeopardy Clauses of the Ohio or United States Constitutions." Naegele at 7. Accordingly, appellants' fourth and Pember's fifth assignments of error are overruled.
In their fifth assignment of error, appellants contend that the notification provisions of R.C. 2950.01 et seq. constitute cruel and unusual punishment and violate appellants' constitutional rights to liberty and safety.
The Eighth Amendment to the United States Constitution and Section 9, Article I of the Ohio Constitution provide that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." "[P]unishments which are prohibited by the Eighth Amendment are limited to torture or other barbarous punishments, degrading punishments unknown at common law, and punishments which are so disproportionate to the offense as to shock the moral sense of the community." State v. Gladding (1990), 66 Ohio App.3d 502,513, quoting McDougle v. Maxwell (1964), 1 Ohio St.2d 68, 69. Sentences which are prohibited by the Eighth Amendment are those that are "so grossly disproportionate to the offenses as to shock the sense of justice in the community." State v. Hamann (1993),90 Ohio App.3d 654, 672.
A person whom the trial court has determined to be a sexual predator is required to register with the county sheriff where he resides or is temporarily domiciled. R.C. 2950.04(A). Such offenders must complete a registration form and provide their current residential address, the name and address of their employer, any other information required by the bureau of criminal identification and investigation, and a photograph. R.C.2950.04(C). Sexual predators must verify their current residential address every ninety days. R.C. 2950.06(B)(1). Sexual predators must also include in their registration information a specific declaration that they have been adjudicated a sexual predator and the license plate numbers of any vehicles owned by them or registered in their name. R.C. 2950.04(C)(1) and (2). A sexual predator must fulfill these requirements for life or until an adjudication is made that he or she is no longer a sexual predator. R.C. 2950.07(B)(1).[6]
The sheriff of the county in which a sexual predator has registered is required to provide a written notice containing certain information about the sexual predator to the following people:
 (1) All occupants of residences adjacent to the offender's place of residence that are located within the county served by the sheriff and all additional neighbors of the offender who are within any category that the attorney general by rule adopted under section 2950.13
of the Revised Code requires to be provided the notice and who reside within the county served by the sheriff;
 (2) The executive director of the public children services agency, * * * that has jurisdiction within the specified geographical notification area and that is located within the county served by the sheriff;
 (3) The superintendent of each board of education of a school district that has schools within the specified geographical notification area and that is located within the county served by the sheriff;
 (4) The appointing or hiring officer of each chartered nonpublic school located within the specified geographical notification area and within the county served by the sheriff or of each other school located within the specified geographical notification area and within the county served by the sheriff and that is not operated by a board of education described in division (A)(3) of this section;
 (5) The director, head teacher, or elementary principal of each preschool program * * * that is located within the specified geographical notification area and within the county served by the sheriff;
 (6) The administrator of each child day-care center or type A family day-care home that is located within the specified geographical notification area and within the county served by the sheriff, and the provider of each certified type B family day-care home that is located within the specified geographical notification area and within the county served by the sheriff. * * *.
 (7) The president or other chief administrative officer of each institution of higher education, * * * that is located within the specified geographical notification area and within the county served by the sheriff, and the chief law enforcement officer of the state university law enforcement agency or campus police department * * * if any, that serves that institution.
 (8) The sheriff of each county that includes any portion of the specified geographical notification area.
 (9) If the offender resides within the county served by the sheriff, the chief of police, marshal, or other chief law enforcement officer of the municipal corporation in which the offender resides or, if the offender resides in an unincorporated area, the constable or chief of the police department or police district police force of the township in which the offender resides.
R.C. 2950.11(A)(1)-(9). The notice must contain the sexual predator's name, residential address or addresses, the sexually oriented offense of which the offender was convicted or to which the offender pled guilty, and a statement that the offender has been adjudicated a sexual predator or a habitual sex offender. R.C. 2950.11(B)(1)-(4). In addition, if the victim of the sexually oriented offense has requested notification, the sheriff is required to notify the victim, in writing, that the offender has registered and include the offender's name and residential address or addresses. R.C. 2950.10(A)(1). Registration information is not available to the public. R.C. 2950.08.
In Lyttle, this court concluded that the sexual predator law does not constitute punishment and is regulatory, rather than punitive in nature. Lyttle at 21-22. Consequently, because we have previously held that the provisions of the statute do not constitute punishment, it follows that the notification provisions of the statute cannot be deemed cruel and unusual punishment.
Furthermore, we find no merit to appellants' argument that the community notification provisions of R.C. Chapter 2950 violate their rights to liberty and safety. In Lyttle, we reasoned:
 All convicted felons face the possibility that their past acts will have future consequences. Dissemination of information about criminal activity always increases the possibility that those involved in the activity will suffer serious negative consequences. A conviction, however, is a public record, and an offender does not have a vested right to prohibit future determinations based in part upon that conviction. Likewise, an offender does not have a vested right in prohibiting the dissemination of public information concerning a prior conviction. The harsh consequences Lyttle expects from classification and community notification come not as a direct result of the sexual offender law, but instead as a direct societal consequence of his past actions. * * * Notification calls for the limited dispersal of a public record for the public's protection.
Lyttle at 27 (Citation omitted). Accordingly, we find that the notification provisions of the sexual predator law do not constitute cruel and unusual punishment. Appellants' fifth assignment of error is overruled.
In their sixth assignment of error, appellants contend that the decision of the trial court determining that they are sexual predators is not supported by clear and convincing evidence. Appellants argue that the state failed to present sufficient evidence upon which the trial court could conclude that they are sexual predators because the prosecutor simply relied on the evidence presented at their trials and failed to call witnesses, present new evidence, or provide expert testimony.
In cases involving offenders convicted of and sentenced for a sexually oriented offense prior to January 1, 1997, who remain incarcerated, the department of rehabilitation and correction ("DOC") must determine whether to recommend that the offender be adjudicated as a sexual predator prior to the offender's release from prison. R.C. 2950.09(C)(1). If the DOC decides to recommend that an offender be determined to be a sexual predator, then it must submit its recommendation to the court which sentenced the offender. Id. The trial court may deny the DOC's recommendation and determine that the offender is not a sexual predator, or conduct a hearing to determine whether the offender is a sexual predator. R.C. 2950.09(C)(2). If the trial court conducts a hearing, both "the offender and the prosecutor shall have an opportunity to testify, present evidence, call and examine witnesses and expert witnesses and cross-examine witnesses and expert witnesses regarding the determination as to whether the offender is a sexual predator." R.C. 2950.09(B)(1). The statute does not require either party to present new evidence or call and examine witnesses. Id.
In making the determination as to whether an offender is a sexual predator, a judge must consider "all relevant factors," including the following ten factors set forth at R.C.2950.09-(B)(2):
(a) The offender's age;
 (b) The offender's prior criminal record regarding all offenses, including, but not limited to, all sexual offenses;
 (c) The age of the victim of the sexually oriented offense for which sentence is to be imposed;
 (d) Whether the sexually oriented offense * * * involved multiple victims;
 (e) Whether the offender used drugs or alcohol to impair the victim of the sexually oriented offense or to prevent the victim from resisting;
 (f) If the offender previously has been convicted of or pleaded guilty to any criminal offense, whether the offender completed any sentence imposed for the prior offense and, if the prior offense was a sex offense or a sexually oriented offense, whether the offender participated in available programs for sexual offenders;
 (g) Any mental illness or mental disability of the offender;
 (h) The nature of the offender's sexual conduct, sexual contact, or interaction in a sexual context with the victim of the sexually oriented offense and whether the sexual conduct, sexual contact, or interaction in a sexual context was part of a demonstrated pattern of abuse;
 (i) Whether the offender, during the commission of the sexually oriented offense * * * displayed cruelty or made one or more threats of cruelty;
 (j) Any additional behavioral characteristics that contribute to the offender's conduct.
After reviewing the testimony and the evidence, and considering the factors found in R.C. 2950.09(B)(2), the trial court "shall determine by clear and convincing evidence whether the offender is a sexual predator." R.C. 2950.09(C)(2). Clear and convincing evidence is that evidence "which will provide in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." Cincinnati Bar Assoc. v. Massengale (1991),58 Ohio St.3d 121, 122. While clear and convincing evidence is "more than a preponderance of the evidence," it does not rise to the level of "evidence beyond a reasonable doubt." State v. Ingram (1992), 82 Ohio App.3d 341, 346. See, also, State v. Danby (1983), 11 Ohio App.3d 38, 41.
At each appellant's respective sexual predator hearings, the prosecutor, Joanne V. Hash, testified, under oath, as to the nature of appellants' conduct giving rise to their respective convictions for various sexually oriented offenses. Hash also specifically brought to the trial court's attention several factors enumerated in R.C. 2950.09(B)(2).
At Nicholas' sexual predator hearing on May 7, 1997, Hash testified regarding the facts underlying Nicholas' convictions. Nicholas and several other young men were drinking alcohol with two teenaged girls, approximately fifteen or sixteen years old. Nicholas kidnapped one girl, tied her hands to the steering wheel of a car, and raped her repeatedly. Nicholas drove the victim around for a period of time and then threw her out of the car unclothed. Nicholas admitted having intercourse with the victim, who claimed that it was not consensual. Evidence was also presented that Nicholas had intercourse with the other girl as well.
Nicholas testified that since he has been in prison, he has completed the Monticello program, a program for sexual offenders, and earned certificates for completion of interpersonal counseling, self-defeating behavior, and positive mental attitude classes. Nicholas introduced into evidence the certificates he had received. Nicholas testified that he is now a different person and has "learned a lot" and "matured a lot." Nicholas stated that he had no prior convictions.
The trial court found Nicholas to be a sexual predator by clear and convincing evidence. The court stated that Nicholas' victim was a child under the age of eighteen and that the court was aware that another victim under the age of eighteen was also involved. The court found that Nicholas used alcohol to possibly reduce or impair the ability of the victim to resist. The court also found that there was threatened cruelty and Nicholas' conduct in driving the victim around naked in the car and dumping her off in the early morning hours was cruel.
At Sandlin's sexual predator hearing, on April 7, 1997, Hash called the court's attention to portions of the transcript of Sandlin's trial. Hash indicated that the victim was raped at least three times and that Sandlin used a knife and threatened her with it. During the course of raping the victim, Sandlin forced her to perform sex acts on a dead body and forced her to stab the body several times. Sandlin also encouraged a co-defendant to participate in sex acts with the victim and watched the co-defendant rape the victim at least two times. The sex offenses occurred over an eighteen hour period and the age of the victim was eighteen. Hash stated that Sandlin has never shown any remorse for the crimes and has never participated in any kind of counseling for sexual offenders.
Sandlin did not present any testimony but he offered into evidence various certificates and letters which note his activities in prison. The certificates indicate that Sandlin completed courses in moral reasoning, the art of reason, parenting skills, a culinary arts program, human development-psychology, and a cleaning and sanitation maintenance training program. While in prison, Sandlin received a general educational development ("GED") degree, a bachelor of arts degree, an associate of arts degree, and a certificate of achievement in communications electronics. The letters submitted by Sandlin indicate that he qualified for the Dean's List on several occasions while taking college courses and that he helped prepare for various Warren Correctional Institution events.
At Azbill's sexual predator hearing, on April 7, 1997, Hash pointed out to the court that the child victim had been to the hospital where she informed a social worker and a detective that Azbill had been taking sexual advantage of her. The victim, who was seven years old at the time, stated that since she was three years old, Azbill had forced her to perform oral sex and had sodomized her. Hash stated that the victim's testimony is consistent with the hospital records following her examination. Hash stated that the assaults occurred over a long period of time and the age of the victim indicates that she had no opportunity to refuse or resist. Hash introduced into evidence the medical records of the victim in addition to Azbill's guilty plea.
Azbill introduced two exhibits evidencing his completion of the Polaris Program, a two-year sex offender program, and a Stress Management Workshop program. Azbill also participated in six months of after care which involves group counseling once per week.
At Tirey's sexual predator hearing on April 7, 1997, Hash called the court's attention to the transcript of proceedings. Hash indicated that there were multiple victims involved, force was used with both children initially, the offenses occurred over a long period of time, and as a result of the acts with her father, one of the children suffered from a sexually transmitted disease. The victims were Tirey's daughters.
Tirey presented testimony from Pat Tirey, his wife. Pat stated that she has had continuing contact with Tirey while he has been in prison and that she does not feel that Tirey is likely to engage in this kind of conduct in the future. Pat testified that Tirey is "learning to accept what has happened" and "that he has to pay for what he's done." Tirey testified that he does not feel that he is a sex offender and that while in prison, he has been going to school, has "learned to read some," and feels "a lot different." Tirey stated that he sees girls in the visiting room and he "don't have no thought about them." Tirey stated that he has not taken any kind of counseling courses since he's been in prison for sex offenders. Tirey testified that with regard to the offenses for which he was convicted, "it was kind of her fault and my fault, the oldest daughter."
The trial court found that Tirey is a sexual predator based upon, among other factors, the age of the victims involved, the fact that there were multiple victims, a demonstrated pattern of abuse over a period of time, the use of his position as their parent in order to manipulate them, and his testimony that he is still of the opinion that fault in this case is shared despite the disparity in age and position of authority.
At Pember's sexual predator hearing on April 7, 1997, Hash offered into evidence a transcript of Pember's testimony in an interview with members of the Warren County Police Department and Warren County Childrens Services. In the transcript, Pember admits his participation in sexual activities with various children. Hash stated that there were many children involved and that the children identified Pember's penis by a specific birthmark. Pember was appointed by the juvenile court to take care of the victims and he used his position as guardian and a foster parent of two children to take advantage of them and to engage in sexual activities with them for a period of years. Pember raped the children and admitted exposing himself to one child. Pember also admitted orally raping a three-year-old child, who was one of his foster children.
Pember testified that he has successfully completed both years of the Polaris program while in prison. Pember stated that he has participated in seminars at the chapel and activities such as the stamp club, joined a group of inmates that help outside needy people, and spent time in the library.
The trial court found by clear and convincing evidence that Pember is a sexual predator. The court found that there were multiple victims involved, the nature of Pember's sexual activity and his past demonstrated a pattern of abuse, the age of the victims were of tender years, and the offenses were facilitated by Pember's manipulation of the legal system by persuading the court to place the victims into his home.
At Madgett's sexual predator hearing on May 7, 1997, Hash related the facts underlying Madgett's conviction. Madgett offered to give the victim a ride home from a tavern, but stopped before arriving at her destination. Madgett performed cunnilingus on the victim and tried to force her to perform fellatio, but she refused. Madgett refused to let the victim out of the car to urinate and the victim, unable to control herself, urinated on the car seat. Madgett then urinated on the victim. When they approached a town, the victim jumped out of the car and immediately called the police. The victim was somewhat retarded and crippled. Hash also brought to the court's attention Madgett's previous record and convictions for public indecency, sexual imposition, intimidating a witness, and sexual battery.
On Madgett's behalf, his attorney stated that Madgett's crime occurred ten years ago, and that while Madgett was in prison, he obtained his GED and completed the Monticello Program for sexual offenders. Madgett also completed the Monticello Program's one year after care program.
At Boggs' sexual predator hearing on June 4, 1997, Hash noted that the victim was Boggs' eleven-year-old stepson. The victim stated that the offenses began four years earlier and occurred over a period of years. The victim was sodomized and forced to perform fellatio. Boggs was granted shock probation on the condition that he attend sexual counseling courses and complete sexual counseling therapy sessions. While on probation, Boggs moved frequently and failed to complete sexual counseling courses as ordered by the court. Hash stated that Boggs showed no interest in voluntarily completing a sexual counseling program. Boggs' probation was later revoked and the previously imposed suspended sentence was reinstated.
Boggs presented testimony from Mary Boggs, his mother. Mary testified that after Boggs was released from prison and placed on probation, he stayed with her until his probation was revoked. Mary stated that it "was [her] fault that [she and Boggs] moved so much" because after her husband died, she "wasn't satisfied anyplace." Mary stated that she is sure Boggs will not re-offend. On behalf of Boggs, his attorney stated that while he has been incarcerated, Boggs completed a three month sexual program which consisted of tests and group sessions.
At Noe's sexual predator hearing on May 7, 1997, Hash explained the facts underlying Noe's conviction. Noe picked up four young girls, drove them in his car, bought alcohol for them and furnished them with marijuana. Noe admitted performing cunnilingus and having intercourse with one of the girls, who was twelve years old. The victim's statement indicated that she told Noe not to do it and asked him to stop. According to the victim, Noe did not stop until their friends, who had taken a walk, returned to the car. Hash introduced into evidence Noe's written statement regarding the events of that evening wherein he admits to the sexual conduct.
On Noe's behalf, his attorney testified that while Noe was incarcerated, he obtained his GED and completed an interpersonal counseling program and the Monticello program, including the after care program. Noe also served as a tutor in the after care program. Noe testified that the tutoring program is a regular job assignment where the tutors work with counselors to help other inmates who participate in the program to learn and understand the classes. Noe offered certificates into evidence indicating his completion of the Monticello program, the after-care therapy program, interpersonal counseling, and eliminating self-defeating behaviors program.
The trial court found that the state had presented clear and convincing evidence that Nicholas, Sandlin, Azbill, Tirey, Pember, Madgett, and Boggs were sexual predators and so adjudicated them. The trial court found that the state had failed to present clear and convincing evidence that Noe is a sexual predator and did not so adjudicate him. After thoroughly reviewing the transcripts of the sexual predator hearings and the evidence presented, we find that there is sufficient evidence in the respective records to support the trial court's determination that Nicholas, Sandlin, Pember, Azbill, Tirey, Madgett, and Boggs are sexual predators. We further conclude that the record supports the trial court's determination that Noe is not a sexual predator. Appellants' sixth and Pember's fourth assignments of error are overruled.
Appellants' seventh assignment of error pertains only to Noe and Pember. In their seventh assignment of error, Noe and Pember contend that the trial court erred by denying their motions to withdraw their guilty pleas because the registration and notification procedures found in R.C. 2950.01 et seq. violate their plea agreements. Noe and Pember argue that by virtue of their respective plea agreements, they entered into a contract with the state pursuant to which each side received adequate consideration for their performances. Noe and Pember suggest that because the state is now able to revisit the original sentence and impose an additional requirement of registration following their release from prison, which was not part of the original plea agreement, the state is impermissibly altering their sentences and breaching the contract which they had previously entered.
This court considered a similar argument in State v. Nelson (Dec. 29, 1997), Clermont App. No. CA96-09-077, unreported, wherein the appellant argued that his guilty plea was improper because "he did not know that by entering his guilty plea he was agreeing to an unforeseen penalty that was caused by the enactment of new legislation," namely, the provisions of R.C.2950.01 et seq. involving the classification of sexual offenders along with attendant registration and notification requirements. Nelson at 2. This court rejected Nelson's argument based upon our determination in Lyttle "that the classifications provisions and attendant registration, verification, and community notification requirements set forth in R.C. Chapter 2950 do not constitute punishment." Nelson at 2-3. The registration and notification requirements of R.C. Chapter 2950 are merely conditions imposed upon offenders after their release from prison and do not alter the provisions of any plea agreements that may have been previously entered between the offender and the state. Appellants' seventh assignment of error as it relates to Noe and Pember is overruled.
Appellants' eighth assignment of error pertains only to Nicholas and Noe. In their eighth assignment of error, Nicholas and Noe contend that they are entitled to be sentenced under the revised sentencing laws found in Am.Sub.S.B. No. 2 ("Senate Bill 2"). Nicholas and Noe argue that by adding the duty to register and the notification provisions to their respective sentences upon their release, the court is effectively resentencing them. Nicholas and Noe argue that since they are being resentenced pursuant to the provisions of R.C. Chapter 2950, they should also be similarly resentenced under the amended sentencing provisions of Senate Bill 2.
The provisions of Senate Bill 2 are prospective in nature and only apply to those offenses committed after July 1, 1996, the effective date of the statute. State v. Carlton (May 28, 1996), Warren App. No. CA96-01-007, unreported. Since Nicholas and Noe were sentenced for offenses committed prior to July 1, 1996, they are not entitled to be resentenced under the amended sentencing provisions of Senate Bill 2. Id.
In addition, we have previously held that the sexual predator classification procedure and the attendant duties of registration and notification found in R.C. 2950.01 et seq. do not impose additional punishment upon offenders. See Lyttle. The duty to register is merely a condition which appellants must satisfy upon their release from prison. The registration requirement does not increase Nicholas and Noe's respective prison sentences or the amount of any fines that may have been imposed. Accordingly, Nicholas and Noe are not entitled to be resentenced under the provisions of Senate Bill 2 by virtue of the enactment of R.C.2950.01 et seq. See Carlton, Warren App. No. CA96-01-007, unreported. Appellants' eighth assignment of error as it pertains to Nicholas and Noe is overruled.
In his sixth assignment of error, Pember contends that the provisions of R.C. 2950.01 et seq. violate R.C. 1.58 and must be declared void.[7] Pember argues that based upon the provisions of R.C. 1.58, the lower court could not find him to be a sexual predator. This court has considered and rejected Pember's argument in State v. Ramsey (Dec. 22, 1997), Clermont App. No. CA97-03-025, unreported. In Ramsey, we rejected an argument that Ramsey's adjudication as a sexual predator violates R.C.1.58(A)(4) based upon our decision in Lyttle that "the sexual predator law does not impose punishment." Ramsey at 3. Accordingly, Pember's sixth assignment of error is overruled.
Judgment affirmed.
POWELL, J., concurs.
KOEHLER, J., dissents.
[1] The classification provisions of R.C. Chapter 2950 became effective on January 1, 1997, while the registration and notification provisions became effective on July 1, 1997.
[2] Counts two (kidnapping), four (rape), and five (rape) were ordered to be served concurrent and consecutive to count one (aggravated murder) and count three (rape) consecutive to counts two, four, and five.
[3] Count three (attempt to commit aggravated rape) was ordered to be served consecutive to count one (attempt to commit aggravated rape) and counts two (attempt to commit aggravated rape), four (attempt to commit aggravated rape), five (attempt to commit aggravated rape), and six (gross sexual imposition) concurrently with the sentence imposed for count three.
[4] Nicholas, Sandlin, Azbill, Tirey, Madgett, Boggs, and Noe are all represented by the same counsel and have collectively filed one brief. Pember, who is also included in our collective reference to the parties as "Appellants," is represented by different counsel. Pember filed a separate brief containing seven assignments of error, some of which raise issues identical to those raised by Nicholas, Sandlin, Azbill, Tirey, Madgett, Boggs, and Noe. We will combine the assignments of error that raise identical issues and will then address any additional assignments of error raised by the parties.
[5] App.R. 12(A)(2) states that a court of appeals need only address errors assigned and briefed. Consequently, a court of appeals may disregard errors "not specifically pointed out in the record and separately argued by brief." C. Miller Chevrolet, Inc. v. Willoughby Hills (1974), 38 Ohio St.2d 298, 301. Because the state failed to file a brief in support of its cross appeal, we hereby dismiss its cross appeal pursuant to Loc.R. 15(E) and (F) of the Court of Appeals of Ohio, Twelfth Appellate District and App.R. 18(C).
[6] If a judge subsequently enters a determination that an offender is no longer a sexual predator, the offender may still be required to comply with the registration requirements for either ten or twenty years. See R.C. 2950.07(B)(1), (2), and (3).
[7] R.C. 1.58(A)(4) provides, in part, that "[t]he reenactment, amendment, or repeal of a statute does not * * * [a]ffect any investigation, proceeding, or remedy in respect of any such privilege, obligation, liability, penalty, forfeiture, or punishment; and the investigation, proceeding, or remedy may be instituted, continued, or enforced, and the penalty, forfeiture, or punishment imposed, as if the statute had not been repealed or amended." R.C. 1.58(B) states that "[i]f the penalty, forfeiture, or punishment for any offense is reduced by a reenactment or amendment of a statute, the penalty, forfeiture, or punishment, if not already imposed, shall be imposed according to the statute as amended."