This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Appellant, Robert Wilson, appeals from the decision of the Lorain County Court of Common Pleas. We affirm.
 I.
On November 1, 1996, Mr. Wilson pled guilty to one count of theft, a violation of R.C. 2913.02(A)(2), a felony of the fourth degree. On April 4, 1997, he was sentenced to a term of twelve months. This sentence was suspended and, as part of his community control, he was placed on probation pursuant to R.C. 2951.02 for three years.
Thereafter, in a journal entry dated September 25, 1997, the trial court indicated that Mr. Wilson's whereabouts were unknown and issued a capias for his arrest. Mr. Wilson was located and arrested on May 2, 1998. On May 15, 1998, Mr. Wilson's probable cause hearing was dismissed pursuant to the request of the adult parole authority and Mr. Wilson's probation was continued. On July 21, 1999, a journal entry again indicated that Mr. Wilson's whereabouts were unknown and a second capias was issued for his arrest. In a journal entry dated October 23, 2001, the trial court noted that Mr. Wilson had been arrested on October 19, 2001 and scheduled a probable cause hearing.
On November 13, 2001, Mr. Wilson filed a motion to dismiss the proceedings. Later he waived the probable cause hearing, admitting probable cause, and, on January 18, 2002, the court held a merits hearing and a hearing on the motion to dismiss. Mr. Wilson was found to be in violation of his probation and was sentenced to a term of imprisonment for six months. This appeal followed.
 II.
Appellant raises two assignments of error. We will consider each in turn.
 A. First Assignment of Error "DEFENDANT WAS DENIED DUE PROCESS OF LAW WHEN HIS PROBATION WAS REVOKED AFTER IT HAD EXPIRED."
In his first assignment of error, Mr. Wilson asserts that the trial court erred in denying his motion to dismiss and finding him in violation of his probation, as the court lacked jurisdiction to proceed because his period of probation had expired.
R.C. 2951.07 provides for the time limitation on probation as follows:
 "Probation under section 2951.02 of the Revised Code continues for the period that the judge or magistrate determines and * * * may be extended. * * * If the probationer absconds or otherwise absents himself or herself from the jurisdiction of the court without permission from the county department of probation or the court to do so, or if the probationer is confined in any institution for the commission of any offense whatever, the probation period ceases to run until such time as the probationer is brought before the court for its further action."
At the end of a probation period, a judge's jurisdiction to revoke probation and impose sentence ceases to exist. See R.C. 2951.09; see, also, generally, State v. Jackson (1995), 106 Ohio App.3d 345, 347-48. However, the probationary period may be tolled if a probationer absconds or otherwise absents himself from the court's jurisdiction. Rash v.Anderson (May 7, 1997), 9th Dist. No. 97CA006728, affirmed (1997),80 Ohio St.3d 349. Specifically, "the issuance of a capias or warrant is sufficient to toll the probationary period until the probationer is brought before the court." Id. (holding that the issuance of capiases during the probationer's probation period tolled the running of his probation period so that the trial court retained jurisdiction to revoke probation and resentence).
In the present case, on April 4, 1997, Mr. Wilson's sentence was suspended and, as part of his community control, he was placed on probation until April 5, 2000, a period of three years. On September 25, 1997, the trial court issued a capias for Mr. Wilson's arrest and he was arrested on May 2, 1998. A second capias was issued for Mr. Wilson's arrest on July 21, 1999. He was thereafter arrested on October 19, 2001. The trial court, in a journal entry dated January 18, 2002, found Mr. Wilson to be in violation of his probation and sentenced him to a term of imprisonment.
Based on the foregoing, the issuance of two capiases for Mr. Wilson during his three-year probation period tolled the probationary period so that the trial court retained jurisdiction to revoke his probation and resentence him on January 18, 2002. See, generally, id; see, also, Statev. Cass (1991), 77 Ohio App.3d 697, 700. Mr. Wilson's first assignment of error is overruled.
 B. Second Assignment of Error "DEFENDANT WAS DENIED DUE PROCESS OF LAW WHEN HIS PROBATION WAS REVOKED."
In his second assignment of error, Mr. Wilson raises several assigned errors. Upon review, we disagree with each of his assertions.
Mr. Wilson first asserts that the trial court erred in failing to specify on the record the exact nature of the probation violation and cites to case law holding that a court must issue a written statement to a probationer with the findings and reasons for probation revocation. InGagnon v. Scarpelli (1973), 411 U.S. 778, 786, 36 L.Ed.2d 656, the United States Supreme Court stated that, at a minimum, due process at a revocation hearing requires that a probationer be given a "written statement by the factfinders as to the evidence relied on and reasons for revoking probation." Thereafter, the Ohio Supreme Court found that, although a trial court did not provide a written statement of the basis for its determination that probation should be revoked, the judge's oral statement of his findings was sufficient to inform the probationer. Statev. Delaney (1984), 11 Ohio St.3d 231, 235. Specifically, the Ohio Supreme Court determined that the oral explanation "sufficiently informed the appellant of the reasons for which his probation was being revoked, while also providing an adequate record for review on appeal." Id; see, also,State v. Rogers (Jan. 2, 1997), 9th Dist. No. 96CA0006, citing to Statev. Bialek (Feb. 17, 1992), 2nd Dist. No. 12323.
We find that Mr. Wilson received sufficient oral notice to advise him of both the trial court's evidence and the reasons underlying his probation revocation. The trial court informed Mr. Wilson that it was concerned with the extended period that Mr. Wilson had been missing, noting, that Mr. Wilson went to Pennsylvania without informing his supervisory officer and, also, that he did not advise the supervisory officer of his location when he returned to Ohio. The court also indicated to Mr. Wilson that the records indicated that nothing had been received by the clerk of courts with regard to restitution. Any error in regard to the trial court not providing written notice was harmless.
Second, Mr. Wilson asserts that any determination that he did not pay his restitution and court costs would be an improper basis for revocation of his probation. In support of this argument, he asserts that failure to pay costs cannot be the basis for revocation of probation. However, case law has held that it is within a court's discretion to revoke probation when a probationer has failed to pay costs and make restitution. See, generally, State v. Woods (1982), 7 Ohio App.3d 81. Moreover, "revocation of probation for failure to pay costs does not constitute a denial of equal protection when the appellant failed to sustain his burden of presenting evidence indicating he made a good faith effort within the limits of his ability to comply with the terms of his probation order."State v. Ford (Mar. 12, 1987), 8th Dist. No. 51833, citing to Woods,7 Ohio App.3d at 81. Accordingly, Mr. Wilson's argument is without merit.
Third, pursuant to Mr. Wilson's community control, he was placed on probation. Mr. Wilson asserts that his probation conditions interfered with his constitutional right to travel. Specifically, he asserts that it was unreasonable for him to be denied the right to visit his ill father who lived in another state.
In his argument, Mr. Wilson has mischaracterized his probation conditions and the trial court's decision, in that he was not denied the right to travel. Rather, as part of his probation, he was required to keep his supervisory officer informed of his residence and to obtain permission from his supervisory officer before changing his residence. In the present case, in the January 18, 2002 hearing, Mr. Wilson admitted that, rather than follow these requirements, he went to Pennsylvania in 1999 for approximately two months and that he left without first obtaining the permission of his supervisory officer. His location and residence was thereafter unknown to the supervisory officer until 2001, approximately two years later. Moreover, in finding that Mr. Wilson had violated his probation, the court indicated that, while it thought that Mr. Wilson should have gotten permission before leaving the state, the court's primary concern was that Mr. Wilson had disappeared for such an extended period of time.
Further, the requirement that Mr. Wilson keep his supervisory officer informed of his residence and obtain permission from his supervisory officer before changing his residence is neither an unreasonable nor unconstitutional restriction. Rather, in light of the fact that Mr. Wilson had been convicted of a crime, the conditions imposed a check on Mr. Wilson's whereabouts and ensured that his supervisory officer was able to maintain contact with him. See State v. Jones (1990),49 Ohio St.3d 51, 52-53; see, also, State v. Oros (Sept. 14, 2001), 4th Dist. No. 01CA7, 2001-Ohio-2574; cf. State v. Sturgeon (Sept. 22, 2000),138 Ohio App.3d 882, 885; but, see, State v. Bates (Nov. 2, 2000), 8th Dist. No. 77522; see, also, State v. Occhipinti (May 14, 1999), 11th Dist. No. 98-L-061.
Finally, Mr. Wilson argues that there was not any evidence that he violated his probation because he had provided his supervisory officer with his address and that, therefore, his location was unknown due only to her lack of effort in attempting to reach him at the address provided. This argument is without merit.
The record in the present case demonstrated that Mr. Wilson had provided his supervisory officer with an address where he was allegedly residing. In the hearing, the officer testified that, in June of 1999, after Mr. Wilson had left the state, she went to the given address, noticed that his name was not listed in the lobby, and spoke with a leasing agent who informed her that Mr. Wilson did not reside at the given address. At the hearing, Mr. Wilson testified that he had resided at that address for several months before he left the state; whereupon, he had placed his possessions in storage.
Clearly, the address provided to Mr. Wilson's supervisory officer would not have assisted the officer in locating Mr. Wilson, as he testified that he no longer resided at that address once he had left the state. Moreover, any alleged lack of effort in attempting to reach him at the address provided would not have changed the fact that Mr. Wilson was missing for approximately two years following the time that he left the state. Furthermore, and more significantly, as part of Mr. Wilson's probation, he was required to keep his supervisory officer informed of his residence. It was not the burden of his supervisory officer to seek him out. See, generally, State v. Pittman (Nov.3, 1983), 7th Dist. No. 477.
 III.
Mr. Wilson's assignments of error are overruled. The decision of the Lorain County Court of Common Pleas is affirmed.
BAIRD, P.J., CARR, J. CONCUR.